ROY NOBLE LEE, Chief Justice,
for the Court:
Kenneth McKenzie filed suit in the Circuit Court of Jones County against South Carolina Insurance Company seeking actual damages claimed to be due under a liability insurance policy covering McKenzie and his plumbing operation issued by South Carolina Insurance Company. McKenzie further sought punitive damages under a bad faith claim asserted by him for the failure of South Carolina to cover liability of McKenzie for underground damage in his operation and, after amendment of the complaint, for failure to investigate the damage and pay same.
After trial on the merits, the jury returned a verdict for McKenzie in the amount of eighteen hundred thirteen dollars ($1,813.00) actual damages and four hundred seventy-five thousand dollars ($475,000) punitive damages. South Carolina has appealed from the judgment entered in the lower court and has assigned eleven (11) errors in the trial below.

Facts

McKenzie has operated a plumbing business since 1976 and sought advice through the years from one Winston Lyon, an employee of Southern Farm Bureau Insurance Company as to what kind of policy he needed to cover his business operations. On Lyon’s advice, he purchased a general liability policy from Southern Farm which contained a standard clause for plumbers which covered underground property damage and contained no deductible provision.
*26 In 1978, Southern Farm ceased writing commercial general liability insurance and Lyon advised McKenzie that the coverage could be written through Rural Insurance Agency, Inc. (Rural). Rural was a wholly owned subsidiary of the Farm Bureau and its agency manager, Eric Rice, had been an underwriter for Farm Bureau. Lyon contacted Rice who contacted one Sam Owens of Owens Insurance Agency to secure the commercial general liability policy. Owens, an independent agent, elected to obtain the coverage from South Carolina Insurance, a member company of the Seibels, Bruce Group. Rice had told Lyon he could obtain the same coverage for McKenzie that Southern Farm had provided, except that the policy would contain a five hundred dollars ($500.00) per occurrence deductible provision. Lyon conveyed that information to McKenzie.
Rice sent Lyon an application form, which was filled out in Lyon’s office. The application was a standard Insurance Services Offices (ISO) form (used nationwide and approved by the State of Mississippi) which required that, if a person wanted underground property damage coverage, he would have to check a block on the application form specifically requesting such coverage. The standard ISO commercial general liability policy issued to plumbers always carried an exclusion for underground property damage and such policies required a request to initiate underground coverage. Lyon did not make the request for underground coverage on the application which he submitted to Rural for McKenzie. The original policy, written according to the application, covered the period from November 24, 1978, to November 24, 1979. The policy which South Carolina wrote for McKenzie in conformity with the application completed by Lyon excluded underground property damage hazard coverage and defined that exclusion as follows:
“underground property damage hazard” includes underground property damage as defined herein and property damage to any other property at any time resulting therefrom, “underground property damage” means property damage to wires, conduits, pipes, mains, sewers, tanks, tunnels, and any similar property, and any apparatus in connection therewith, beneath the surface of the ground or water, caused by and occurring during the use of mechanical equipment for the purpose of grading land, paving, excavating, drilling, burrowing, filling, back-filling, or pile driving....
The coverage was extended by new policies issued annually through 1983 and contained the exclusion.
In 1982, McKenzie, under contract with the City of Laurel Housing Authority, was replacing water and sewer lines for a housing project. In the process, he damaged the underground cables of South Central Bell on ten (10) separate occasions in the late summer and fall of 1982. He told Lyon of the bills he had received from South Central Bell and, since McKenzie indicated there would be more bills coming, Lyon asked that he wait and submit all the bills at once, at which time Lyon would submit them all to Rural.
McKenzie submitted the completed bills to Lyon, who forwarded them to Eric Rice at Rural. It is uncontradicted that McKenzie’s policy had a $500.00 deductible per occurrence, that McKenzie knew of the deductible from the outset, and that only one of the ten incidents involved damages greater than $500.00. That one occurrence involved damage in the amount of $813.27, which was $313.27 over the deductible. There was nothing on the bills themselves to indicate whether the damage had been caused by the use of mechanical equipment or by the use of hand tools. When McKenzie presented his bills to Lyon, he was told by Lyon that the claims were not covered.
McKenzie consulted an attorney Abernathy, who wrote directly to the Seibels, Bruce Group on February 24, 1983, claiming that the policy issued to McKenzie excluded underground coverage and asserting that South Carolina Insurance had wil-fully, fraudently, and in bad faith breached a duty to McKenzie by issuing to him a policy which excluded underground damage coverage. South Carolina stated that this letter is the first notice it had received of the claims.
*27 In reply to the Abernathy letter, Seibels called attention to the comprehensive general liability Form L-6394a, and to the code and description of hazards where there appeared the code number 17185u. Seibels pointed out that, “If the hazard code is followed by u, this means that there is no coverage for underground property damage to housing.”
It is interesting to note that South Central Bell, though unpaid for the damage done by McKenzie, did not institute legal proceedings to collect for the damages and there was testimony to the effect that the damage bills had been written off by South Central Bell as uncolleetible. However, McKenzie filed suit in the County Court of Jones County, in May of 1985, against South Central Bell, alleging that Bell’s failure to properly mark its underground cables had resulted in losses to McKenzie. South Central Bell counteclaimed for the damage to its cables alleging, inter alia, that McKenzie had breached his duty to “hand tool the last two (2") inches of excavation.” On December 10, 1984, Attorney Abernathy, wrote South Carolina that he had filed suit on behalf of McKenzie against South Central Bell and attached a copy of the counterclaim. He requested that South Carolina provide a defense for McKenzie.
On May 5, 1985, McKenzie instituted suit in this matter against South Carolina Insurance Company, Winston Lyon and Sam Owens, which was amended on September 18, 1985, to include the Jones County Farm Bureau, Rural Insurance Agency, Eric Rice, Southern Farm Bureau Casualty Company, Mississippi Farm Bureau Mutual Insurance Company and Mississippi Farm Bureau Federation. The original and subsequent complaints alleged tortious breach of contract, breach of fiduciary duties and fraud in the inducement of a contract. The second amended complaint also alleged that some of the damage done to the telephone cables was not within the policy exclusion because the damage had been done by hand tools and not by mechanical equipment. The second amended complaint further alleged bad faith failure to investigate and bad faith refusal to pay the claims in the absence of a legitimate reason for not paying. Prior to trial, all defendants were dismissed except South Carolina, Lyon, Rice, and Rural. The case was tried before a jury on October 2, 8, and 6, 1986, in the Circuit Court for the Second Judicial District of Jones County. In the first phase of the bifurcated proceedings, the jury returned a verdict in the amount of $1,813.00 in favor of McKenzie against Rice, Rural and South Carolina. The jury found for Lyon. After the jury had returned its verdict, but before the issue of punitive damages was submitted to the jury, the court announced to the jury that the case against Rice and Rural had been settled, leaving South Carolina Ins. Co. as the only defendant.
In the second phase of the bifurcated trial, the issue of punitive damages was submitted to the jury. The trial judge ruled that McKenzie could not submit or argue to the jury the issue of the company’s failure to provide the coverage that McKenzie wanted and limited counsel to a presentation of the issues of (1) failure to investigate and (2) failure to defend the South Central Bell counterclaim.

Law

L — II.
THE LOWER COURT ERRED IN FAILING TO DIRECT A VERDICT FOR APPELLANT AT THE CLOSE OF THE EVIDENCE AND IN FAILING TO GRANT A PEREMPTORY INSTRUCTION ON BEHALF OF THE APPELLANT.
THE LOWER COURT ERRED IN SUBMITTING THE ISSUE OF PUNITIVE DAMAGES TO THE JURY.
Winston Lyon, who had obtained insurance coverage for McKenzie from Southern Farm Bureau, obtained coverage for him from South Carolina after passing through several agencies. Lyon completed the standard insurance form for commercial liability coverage, but failed to check a box on the form which requested underground coverage. Since he did not request the *28 coverage, the policy was issued with the standard exclusion hereinabove mentioned.
Four and one-half (4-½) years later when McKenzie had ten (10) claims, only one of which was over the $500.00 deductible, he was told there was no coverage. South Carolina claims that the first it knew of McKenzie’s claim was from the letter in which McKenzie’s attorney asserted there was no coverage. Assuming that South Carolina accepted the attorney’s assertion at face value, the only investigation required was to look at the policy which had been issued and to look at the application which initiated the policy. At that point, it could reasonably be said that there was no necessity for South Carolina to do any investigation of the incidents giving rise to the claim.
After McKenzie’s attorney filed suit in his behalf against South Central Bell, he added the “bad faith” allegations apparently learning from the judge in the county court trial that the policy exclusion related only to damage caused by the use of mechanical equipment and not hand tools. Further, the circuit court judge indicated as much when he submitted the punitive damage issue to the jury as follows:
I will overrule your motion. I think the distinction is that I should have directed a verdict in favor of the plaintiff in this case on actual damages. That’s how you distinguish it.
Let me understand — be sure that I am understood. I think two people made a mistake in this case. I think the plaintiff . made a mistake when he, in my mind, unquestionably assumed there was no coverage to begin with. I think his actions. indicated that and that his correspondence indicated that, and at that stage of the trial — at that stage of the handling of the claim that it was a fail-, ure of the insurance company to provide any coverage in the policy that had been requested as far as underground coverage is concerned. I think it was an oversight or a later acquired position that the plaintiff decided later that there was a little bit of coverage. And, I think he did that after I ruled in the other case and pointed out that there was at least some coverage in the policy in my opinion.
And, I think the insurance company seized upon the plaintiff’s misjudgment of the coverage in the case to begin with to say, “Well, he says there is no coverage and we don’t think we are liable because of the knowledge of the agent.”
But, if this Court is right about there being coverage in the policy for underground damage done by hand tools, nobody ought to know that better than the writer of the insurance.
I haven’t heard any argument that satisfied my mind that the company didn’t know that there was coverage for damages caused by hand tools.
It was only after the county court trial that McKenzie claimed a bad faith refusal to investigate to see whether the damage had been caused by mechanical equipment or by the use of hand tools. Surely, South Carolina was knowledgeable that the breaking of telephone cables would be difficult or impossible to do with hand tools, e.g., a sharp shooter.[1] The company’s action in assuming the accident di(j not occur through the use of hand tools is reasonable. South Central Bell’s contract required that hand tools be used within two (2) inches of its cable in order to prevent it being cut.
In the county court trial, McKenzie’s answer to South Central Bell’s counterclaim included the statement that “The Plaintiff had no way of knowing when he was wi-thint two (2") inches of an underground cable.” South Carolina could reasonably conclude from that sworn statement in the pleading that McKenzie was denying a duty to hand-tool and was not claiming that he had hand-tooled. Likewise, South Carolina could reasonably infer that McKenzie *29 had not hand-tooled. Evidence in the circuit court trial of the case sub judice indicated that the damage was done by the back hoe and it was uncontradicted that the teeth marks of the back hoe were imprinted under the cable line.
However, there was evidence from McKenzie that he used hand tools, e.g., the sharp shooter, which broke the cable. Accepting that evidence and excluding all evidence of the appellant conflicting therewith on the issue of liability, we are of the opinion that the lower court correctly denied a directed verdict on actual damages. However, the jury verdict was for $1,813.00 actual damages and it is uncon-tradicted that the only amount which South Carolina owed McKenzie under the policy was $313.00, which was that amount over the deduction. We can only conclude that the jury added $1,500.00 actual damages for attorney’s fees in the lower county court action, because South Carolina was required to defend under the policy. Hall v. Miss. Chemical Express, Inc., 528 So.2d 796, 798 (Miss.1988); Lewis Grocer Co. v. Williamson, 436 So.2d 1378, 1380 (Miss. 1983); Paymaster Oil Co. v. Mitchell, 319 So.2d 652, 657 (Miss.1975).
As stated hereinabove, on the information and material before it as to whether the cable damage to South Central Bell was from mechanical machinery or hand tools, we are of the opinion that it was not unreasonable for South Carolina to rely upon the same rather than make further investigation and, in doing so, it acted reasonably. Further, although McKenzie was due a defense by his insurer of the county court counterclaim of South Central Bell if there was policy coverage, South Carolina was acting on McKenzie’s assertion that there was no coverage. Under the facts of that case and situation — that his attorney had filed for damages against South Central who had written off their claim against him for ten (10) separate occurrences — the fact that South Carolina did not provide a defense on the counterclaim to McKenzie is not such a malicious, willful act or such gross and wanton negligence as to constitute an independent tort. Mutual Life Ins. Co. of New York v. Wesson, 517 So.2d 521 (Miss.1987); Blue Cross & Blue Shield of Miss. v. Maas, 516 So.2d 495, 498 (Miss. 1987); Aetna Casualty & Surety Co. v. Day, 487 So.2d 830, 832 (Miss.1986); Weems v. American Security Ins. Co., 486 So.2d 1222, 1226-1227 (Miss.1986).
Therefore, we are of the opinion that the lower court erred in submitting the question of punitive damages to the jury and the judgment of $475,000 punitive damages is reversed and judgment is rendered here for South Carolina.
AFFIRMED ON ACTUAL DAMAGES; REVERSED AND RENDERED ON PUNITIVE DAMAGES.
HAWKINS and DAN M. LEE, P.JJ., PRATHER, ROBERTSON, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.

. A “sharp shooter" is a type of shovel with the spade approximately 18 inches long and 8 inches wide and is used to dig straight down and deep. It is difficult to cut or break a medium sized plant root the size of an adult middle finger, much less an encased cable. It is a simple tool and is a part of the yard implements of many families. The writer has used one for years.