Curtis McCULLOUGH and Judith M.
McCullough, husband and wife,
Petitioners,

v.

GOLDEN RULE INSURANCE CO., an
Illinois corporation doing business in
Wyoming, Respondent.

No. 88–193.

Supreme Court of Wyoming.

April 5, 1990.

Stuart S. Healy of Healy & Kinnaird,
Sheridan and Glenn E. Smith, Cheyenne,
for petitioners.

Stephen S. Ashley of Ashley & Ashley,
San Francisco, Cal., Thomas G. Gorman of
Hirst & Applegate, Cheyenne, and Guy E.
McGaughey, Jr. of McGaughey & McGaughey, Lawrenceville, Ill., for respondent.

George Santini, Cheyenne, for amicus curaie, Wyoming Trial Lawyers Ass'n.

John A. Sundahl and George E. Powers,
Jr. of Godfrey, Sundahl & Jorgenson, Cheyenne and G.G. Greenlee of Murane &
Bostwick, Casper, for amicus curiae, Defense Lawyers Ass'n of Wyoming, Inc.

Before THOMAS, URBIGKIT, MACY
and GOLDEN, JJ., and BROWN, J., Ret.

URBIGKIT, Justice.

We consider two questions certified from
the United States Court of Appeals for the
Tenth Circuit:

> Does an insurance company owe a duty
> of good faith to its policyholders not to
> unreasonably deny a claim for benefits
> under the policy, the breach of which
> duty gives rise to an independent tort
> action?
>
> If such a tort action is permitted, in
> addition to showing that the claim was
> denied unreasonably and without proper
> cause, must the policyholder demonstrate
> that the insurance company intentionally,
> knowingly, or recklessly denied the claim
> for benefits?

The first certified question is answered
"yes," but the second certified question is
answered by enunciating another standard
for proof of the tort of violation of the duty
of good faith and fair dealing. In response, we adopt the independent tort thesis of *Gruenberg v. Aetna Ins. Co.*, 9
Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032
(1973) and establish the "fairly debatable"
objective standard care analysis of
*Anderson v. Continental Ins. Co.*, 85
Wis.2d 675, 271 N.W.2d 368 (1978) for any
award of extra-contractual damages. The
criteria for award of any punitive damages
is provided by present Wyoming case law
which will maintain a consistent rule in all
cases and avoid differentiation between
first-person or third-person insurance cases
or with other punitive damage claims.

The facts, as discerned from the certification order, disclose that this case was initiated by the medical insurance policyholder in Wyoming state district court and then removed on diversity grounds to the federal district court. The focus of the suit is a major medical health insurance policy purchased by Curtis and Judith McCullough from Golden Rule Insurance Company (Golden Rule). The policy was applied for and became effective June 1, 1983. The policy mandated a fifteen day waiting period before coverage could begin and defined a "preexisting condition" to deny coverage for any preexisting illness.

Subsequent surgical bills were incurred by Mrs. McCullough for which claims were denied by Golden Rule as preexisting. In the litigation in federal court, Golden Rule received an unfavorable jury verdict on a contract claim and a directed verdict on the companion tort bad faith claim. The basis of the directed verdict was the anticipation of the federal court that Wyoming, where this court had not previously spoken, would not adopt the first-person independent tort cause of action. McCullough appealed to the Tenth Circuit Court of Appeals from the directed verdict of the bad faith tort claim and the Tenth Circuit, noting our decision of *Western Casualty and Surety Co. v. Fowler*, 390 P.2d 602 (Wyo.1964), certified the legal issue pursuant to W.S. 1–13–104 through 1–13–107 for our finite resolution since clear precedent in state law did not exist on implementation of first-person independent tort complaint.

## ANALYSIS

### 1. First Question—Recognition of Bad Faith as a Tort

■ The McCulloughs, supported by amicus curiae brief,[1] advance the premise that the legal duty of good faith and fair dealing arises from the contractual relationship but does not stem solely from the contract itself. Consequently, it is imposed by law and an independent tort action should be possible so the unequal bargaining power of the parties to an insurance contract is recognized in a way that would arguably deter bad faith claim practices by insurers.

Golden Rule, also buttressed by amicus curiae brief,[2] strenuously argues that the implied duty of good faith and fair dealing is a simple contractual duty which prevents an independent tort action. On the first question, Golden Rule's gravamina, in addition to public policy concerns, are that legislative preemption has occurred and the theoretical bases of first-party bad faith actions are not sound. The preemption argument is that the Wyoming legislature has preempted the field by enacting the Unfair Trade Practices Act, W.S. 26–13–101 through 26–13–124 and an attorney's fees and interest recovery statute, W.S. 26–15–124(c)[3]. The attack on the utilization of first-party bad faith cuts to the fundamental difference between third-party and first-party situations focusing on the adversarial nature of first-party relationships where it is argued no fiduciary relationship develops, no relationship of trust or reliance on the contract appears, and no indicia of agency becomes present. Unlike the third-party situation, both the insured and the insurer in the first-party context are parties to the contract and their rights should be controlled solely by the insurance policy.

The DLA brief, in relation to the first question, essentially argues in parallel to the contentions of Golden Rule, but broad-

1. Wyoming Trial Lawyers Association (WTLA).

2. Defense Lawyers Association of Wyoming, Inc. (DLA).

3. W.S. 26–15–124(c) provides:
   In any actions or proceedings commenced against any insurance company on any insurance policy or certificate of any type or kind of insurance, or in any case where an insurer is obligated by a liability insurance policy to defend any suit or claim or pay any judgment on behalf of a named insured, if it is determined that the company refuses to pay the full amount of a loss covered by the policy and that the refusal is unreasonable or without cause, any court in which judgment is rendered for a claimant may also award a reasonable sum as an attorney's fee and interest at ten percent (10%) per year.

ens the preemption argument to encompass the entire Wyoming Insurance Code in W.S. 26–1–101 through 26–38–106. It stresses that any recognition of first-party bad faith as a tort "can only disturb the balance that has been struck by the Wyoming Legislature." Also, it broaches the view that *Arnold v. Mountain West Farm Bureau Mut. Ins. Co., Inc.*, 707 P.2d 161 (Wyo.1985) is controlling and should answer the first question in the negative. Justification in logic is presented by all litigants but, aside from their roots in economic interest, the direct inquiry is should Wyoming have the insurance company duty of good faith and fair dealing first-party tort cause of action and, if so, what should be the standard for application of the cause of action and with what effect on potential award of punitive damages.

While a majority of states have adopted this cause of action,[4] the label attached to it and the standards to determine bad faith differ among the jurisdictions. The approaches divide into four main categories: (1) recognized as an independent tort;[5] (2) labeled as contractual but allowing a broader range of damages which may include punitives;[6] (3) characterized as contractual and confining to strictly benefit of the bargain damages;[7] or (4) established statuto-

**4.** See Comment, *Establishing the Tort of Bad Faith in Wyoming*, XX Land & Water L.Rev. 625 (1985) and citations therein for an overview of this tort.

**5.** *See Justin v. Guardian Ins. Co., Inc.*, 670 F.Supp. 614 (D.V.I.1987); *DiSalvatore v. Aetna Cas. & Sur. Co.*, 624 F.Supp. 541 (D.N.J.1986); *Washington v. Group Hospitalization, Inc.*, 585 F.Supp. 517 (D.D.C.1984); *Phillips v. Aetna Life Ins. Co.*, 473 F.Supp. 984 (D.Vt.1979); *Chavers v. National Sec. Fire & Cas. Co.*, 405 So.2d 1 (Ala. 1981); *United Services Auto. Ass'n v. Werley*, 526 P.2d 28 (Alaska 1974); *Sparks v. Republic Nat. Life Ins. Co.*, 132 Ariz. 529, 647 P.2d 1127, *cert. denied* 459 U.S. 1070, 103 S.Ct. 490, 74 L.Ed.2d 632 (1982); *Aetna Cas. & Sur. Co. v. Broadway Arms Corp.*, 281 Ark. 128, 664 S.W.2d 463 (1984); *Gruenberg*, 510 P.2d 1032; *Travelers Ins. Co. v. Savio*, 706 P.2d 1258 (Colo.1985); *Buckman v. People Exp. Inc.*, 205 Conn. 166, 530 A.2d 596 (1987); *Continental Ins. Co. v. Lynham*, 293 A.2d 481 (D.C.App.1972); *White v. Unigard Mut. Ins. Co.*, 112 Idaho 94, 730 P.2d 1014 (1986); *Dolan v. Aid Ins. Co.*, 431 N.W.2d 790 (Iowa 1988); *Gibson v. National Ben Franklin Ins. Co.*, 387 A.2d 220 (Me.1978); *Weems v. American Sec. Ins. Co.*, 486 So.2d 1222 (Miss.1986); *Lipinski v. Title Ins. Co.*, 202 Mont. 1, 655 P.2d 970 (1982); *Chavez v. Chenoweth*, 89 N.M. 423, 553 P.2d 703 (1976); *United States Fidelity & Guaranty Co. v. Peterson*, 91 Nev. 617, 540 P.2d 1070 (1975); *Dailey v. Integon General Ins. Corp.*, 75 N.C.App. 387, 331 S.E.2d 148, *review denied* 314 N.C. 664, 336 S.E.2d 399 (1985); *Newton v. Standard Fire Ins. Co.*, 291 N.C. 105, 229 S.E.2d 297 (1976); *Corwin Chrysler–Plymouth, Inc. v. Westchester Fire Ins. Co.*, 279 N.W.2d 638 (N.D. 1979); *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272, 452 N.E.2d 1315 (1983); *Christian v. American Home Assur. Co.*, 577 P.2d 899 (Okl. 1977); *Bartlett v. John Hancock Mut. Life Ins. Co.*, 538 A.2d 997 (R.I.1988); *Bibeault v. Hanover Ins. Co.*, 417 A.2d 313 (R.I.1980); *Nichols v. State Farm Mut. Auto. Ins. Co.*, 279 S.C. 336, 306 S.E.2d 616 (1983); *Matter of Certification of a Question of Law from the U.S. Dist. Court, Dist.*

of South Dakota, Western Div., 399 N.W.2d 320 (S.D.1987); *Arnold v. National County Mut. Fire Ins. Co.*, 725 S.W.2d 165 (Tex.1987); *Escalante v. Sentry Ins.*, 49 Wash.App. 375, 743 P.2d 832 (1987); and *Anderson*, 271 N.W.2d 368.

**6.** *See Vernon Fire & Cas. Ins. Co. v. Sharp*, 264 Ind. 599, 349 N.E.2d 173 (1976); *Pirkl v. Northwestern Mut. Ins. Ass'n*, 348 N.W.2d 633 (Iowa 1984); *Lawton v. Great Southwest Fire Ins. Co.*, 118 N.H. 607, 392 A.2d 576 (1978); *Jarvis v. Prudential Ins. Co. of America*, 122 N.H. 648, 448 A.2d 407 (1982); *Fleming v. Allstate Ins. Co.*, 106 A.D.2d 426, 482 N.Y.S.2d 519 (1984); *Halpin v. Prudential Ins. Co. of America*, 48 N.Y.2d 906, 425 N.Y.S.2d 48, 401 N.E.2d 171 (1979), *reargument denied* 49 N.Y.2d 801, 426 N.Y.S.2d 1029, 403 N.E.2d 466 (1980); *Employers' Fire Ins. Co. v. Love It Ice Cream Co.*, 64 Or.App. 784, 670 P.2d 160 (1983); *Beck v. Farmers Ins. Exchange*, 701 P.2d 795 (Utah 1985); and *Hayseeds, Inc. v. State Farm Fire & Cas. Co.*, 352 S.E.2d 73 (W.Va. 1986).

**7.** *See A & E Supply Co., Inc. v. Nationwide Mut. Fire Ins. Co.*, 798 F.2d 669 (4th Cir.1986), *cert. denied* 479 U.S. 1091, 107 S.Ct. 1302, 94 L.Ed.2d 158 (1987) (Virginia law does not recognize the tort); *Federal Kemper Ins. Co. v. Hornback*, 711 S.W.2d 844 (Ky.1986); *Johnson v. Federal Kemper Ins. Co.*, 74 Md.App. 243, 536 A.2d 1211, *cert. denied*, 313 Md. 8, 542 A.2d 844 (1988); *Kewin v. Massachusetts Mut. Life Ins. Co.*, 409 Mich. 401, 295 N.W.2d 50 (1980); *Saltou v. Dependable Ins. Co., Inc.*, 394 N.W.2d 629 (Minn.App. 1986); and *Haagenson v. National Farmers Union Property and Cas. Co.*, 277 N.W.2d 648 (Minn.1979); *cf. Short v. Dairyland Ins. Co.*, 334 N.W.2d 384 (Minn.1983) (duty to settle). *See* Comment, *Federal Kemper Insurance Company v. Hornback and the Demise of First Party Bad Faith in Kentucky*, 14 N.Ky.L.Rev. 415 (1988). *Cf.* Harvey and Wiseman, *First Party Bad Faith: Common Law Remedies and a Proposed Legislative Solution*, 72 Ky.L.J. 141 (1983) (an early case of a bad prophecy).

rily.[8] Despite the diversity among the jurisdictions, we believe the superior view recognizes the existence of the independent tort for violation of a duty of good faith and fair dealing in insurance policy application by the carrier to its insured.

Wyoming law has a consistent thread running from the 1964 case of *Western Casualty and Surety Co.*, 390 P.2d 602 involving the third-party situation of a failure to settle and *Arnold*, 707 P.2d 161 involving first-party uninsured motorist coverage, so that recognition of the independent action for the tort of first-party bad faith would be structurally consistent and could be expected.[9] Additionally, this court in *Tate v. Mountain States Tel. and Tel. Co.*, 647 P.2d 58, 63 (Wyo.1982) held:

> There are certain classes of contracts which create a relation out of which certain duties arise as implied by law independently of the express term of the contract. If the negligent breach of contract is also a breach of such duty the remedy is ex contractu and ex delicto. * * * Such is the situation in this case. Of course, a double recovery is not allowed.

The insurance contract is one of these special classes of contracts so that this duty of good faith and fair dealing imposed by law arises from the contractual relationship. *Anderson*, 271 N.W.2d at 374; *Hilker v. Western Automobile Ins. Co. of Ft. Scott, Kan.*, 204 Wis. 1, 231 N.W. 257 (1930). *See also Hoiness–LaBar Ins. v. Julien Const. Co.*, 743 P.2d 1262 (Wyo.1987); *Hursh Agency, Inc. v. Wigwam Homes, Inc.*, 664 P.2d 27, 32 (Wyo.1983), liability could lie either for breach of contract or negligent default of duty imposed by contract; and *Hagar v. Mobley*, 638 P.2d 127, 137 (Wyo. 1981), where duty arose from statutory standards imposed on real estate brokers.

The fear that recognition of this cause of action will blur the distinction between traditional theories of tort and contract is unsound.

The fear that such a holding would eliminate the "barrier" between tort and contract and lead generally to the awarding of punitive damages in all breach of contract cases is unwarranted. Permitting an insured to maintain a cause of action in tort is justified primarily on the basis of the "public service" nature of the insurance business and the unequal bargaining relationship between insurer and insured. These circumstances do not exist in all, or even in most, contracts. *Roberts v. Western–Southern Life Ins. Co.*, 568 F.Supp. 536, 555 n. 44 (N.D.Ill. 1983). *See also Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272, 452 N.E.2d 1315 (1983). Additionally, this court has at least inferentially recognized that insurance contracts involve unequal bargaining power by adoption of the rate of construction favoring the insured. *See Aetna Ins. Co. v. Lythgoe*, 618 P.2d 1057 (Wyo.1980) and *Alm v. Hartford Fire Ins. Co.*, 369 P.2d 216 (Wyo.1962). *See also* Comment, *Establishing the Tort of Bad Faith in Wyoming*, XX Land & Water L.Rev. 625, 628 (1985), which recites the inequality of bargaining power thesis. *See Neal v. State Farm Ins. Companies*, 188 Cal.App.2d 690, 10 Cal.Rptr. 781 (1961). The foundational case of insurer liability as asserting rights to good faith and rejecting imposition of oppression was *Hilker*, 231 N.W. at 258, which stated:

> In view of the fact that these contracts of insurance are prepared by the company and are not prescribed by law, the tendency of the decisions has been to extend, rather than to circumscribe, the field of liability on the part of the compa-

---

**8.** *See Leonard v. Firemen's Ins. Co. of Newark, N.J.*, 100 Ga.App. 434, 111 S.E.2d 773 (1959); *Mohr v. Dix Mut. County Fire Ins. Co.*, 143 Ill. App.3d 989, 97 Ill.Dec. 831, 493 N.E.2d 638 (1986); *Debolt v. Mut. of Omaha*, 56 Ill.App.3d 111, 13 Ill.Dec. 656, 371 N.E.2d 373 (1978); *Duncan v. Andrew County Mut. Ins. Co.*, 665 S.W.2d 13 (Mo.App.1983); *Chandler v. Prudential Ins. Co.*, 715 S.W.2d 615 (Tenn.App.1986); and Fla.Stat.Ann. § 624.155 (West 1984).

**9.** In *Arnold*, 707 P.2d at 164, a modest award of damages was included in the jury verdict entered against the carrier for violation of a duty created by "the implied covenant of good faith." The carrier did not appeal and the issues presented on appeal considered claims of error made by the insured on the uninsured motorist provision in the policy.

ny and to hold that the rights of the insured "go deeper than the mere surface of the contract written for him by the defendant. Its stipulations imposed obligations based upon those principles of fair dealing which enter into every contract." *Brassil v. Maryland Casualty Co.*, 210 N.Y. 235, 104 N.E. 622, 624, L.R.A. 1915A, 629, 632.

That court further recited " 'that it would be a reproach to the law if there were no remedy for so obvious a wrong as was inflicted upon this plaintiff.' " *Id.* 231 N.W. at 261 (quoting *Brassil v. Maryland Casualty Co.*, 210 N.Y. 235, 104 N.E. 622, 624). On rehearing, *Hilker v. Western Automobile Insurance Co. of Ft. Scott, Kan.*, 204 Wis. 1, 235 N.W. 413, 415–16 (1931) stated:

> We can see no room to quibble upon the proposition that the insurer made an inadequate, a careless, if not shiftless, investigation of the facts with reference to the accident and injury, that it never at any time was in position to exercise a sound or good-faith judgment, and that in none of these respects did it meet the duty which it owed to the plaintiff.

An earlier authority on the emerging trend was Note, *The Availability of Excess Damages for Wrongful Refusal to Honor First Party Insurance Claims—An Emerging Trend,* 45 Fordham L.Rev. 164 (1976). The countervailing view was stated in Thornton and Blaut, *Bad Faith and Insurers: Compensatory and Punitive Damages,* 12 Forum 699 (1977).[10]

Wyoming generally recognizes the benefit of the bargain damages in relation to contractual damages. *UNC Teton Exploration Drilling, Inc. v. Peyton,* 774 P.2d 584 (Wyo.1989); *Robert W. Anderson Housewrecking and Excavating, Inc. v. Board*

of Trustees, School Dist. No. 25, Fremont County, Wyoming, 681 P.2d 1326 (Wyo. 1984); *Panhandle Eastern Pipe Line Co. v. Smith,* 637 P.2d 1020 (Wyo.1981). *Compare Atlas Const. Co. v. Slater,* 746 P.2d 352 (Wyo.1987), assessing detriment for tort damages which were proximately caused by breach of duty. The additional impetus for good faith is furnished by the contingencies as the price of bad faith which are provided by a tort standard protected duty. *Crisci v. Security Ins. Co. of New Haven, Conn.,* 66 Cal.2d 425, 58 Cal. Rptr. 13, 426 P.2d 173 (1967). *See also* J. McCarthy, *Punitive Damages in Bad Faith Cases,* § 1.8 (4th ed. 1987) in analysis of the effect of *Crisci.*

> To deny an action in tort would deny such recovery and consequently encourage insurers to delay settlement. In contrast, an action in tort will provide necessary compensation for insureds and incentive for insurers to settle valid claims. * * * At worst, the availability of an action in tort will add nothing to the liability of insurers.

*White v. Unigard Mut. Ins. Co.,* 112 Idaho 94, 730 P.2d 1014, 1018 (1986). *See also* Annotation, *Insurer's Liability for Consequential or Punitive Damages for Wrongful Delay or Refusal to Make Payments Due Under Contracts,* 47 A.L.R.3d 314 (1973).

Preclusion by alternative statutory remedy has been denied acceptance in most jurisdictions unless the remedy would be as broad as the bad faith tort claim. It seldom is and would not be in Wyoming and we join the majority precept in rejection of statutory preemption. *Travelers Ins. Co. v. Savio,* 706 P.2d 1258 (Colo.1985). Furthermore, it is logically argued that *Western Casualty and Surety Co.,* 390 P.2d

---

**10.** A most thoughtful review of the bad faith tort is provided by the rehearing analysis of the Alabama court in *Chavers,* 405 So.2d 1. See, likewise, *Aetna Cas. & Sur. Co.,* 664 S.W.2d 463, where the large verdict was reversed on appeal. *See also* Langdon and Sytsma, *The Duty of Good Faith and Fair Dealing and the Pre-Adjudicatory Role of the Insurance Company Advocate,* 45 Ins.Couns.J. 309 (1978) and S. Ashley, *Bad Faith Actions—Liability and Damages,* ch. 2, § 2:19 and ch. 5 (1984).

To be compared after the demise of *Royal Globe Ins. Co. v. Superior Court of Butte County,* 23 Cal.3d 880, 153 Cal.Rptr. 842, 592 P.2d 329 (1979) in California by *Moradi–Shalal v. Fireman's Fund Ins. Companies,* 46 Cal.3d 287, 250 Cal.Rptr. 116, 758 P.2d 58 (1988) is Practicum, *The Overruling of Royal Globe: A "Royal Bonanza" For Insurance Companies, But What Happens Now?,* 16 Pepperdine L.Rev. 763 (1989).

602 is dispositive since the statutory preemption or preclusion would logically apply to either type of bad faith claim. Clearly, the Wyoming statutes, W.S. 26–15–124(c) and 26–13–124, and the entire insurance code, W.S. 26–1–101 through 26–38–106, do not provide the same scope of remedies as found in the good faith and fair dealing independent tort remedy. *See* Comment, *supra*, XX Land & Water L.Rev. at 640 and W. Shernoff, S. Gage & H. Levine, *Insurance Bad Faith Litigation*, § 7.04[1] (1989).

### 2. Second Question—The Applicable Standard

■ We believe the appropriate test to determine bad faith is the objective standard whether the validity of the denied claim was not fairly debatable. As this test was further examined by Justice Heffernan in *Anderson*, 271 N.W.2d at 376–77, he added:

> Whether a claim is "fairly debatable" also implicates the question whether the facts necessary to evaluate the claim are properly investigated and developed or recklessly ignored and disregarded.

> To show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim. It

is apparent, then, that the tort of bad faith is an intentional one. * * *

\*   \*   \*   \*   \*   \*

The tort of bad faith can be alleged only if the facts pleaded would, on the basis of an objective standard, show the absence of a reasonable basis for denying the claim, i.e., would a reasonable insurer under the circumstances have denied or delayed payment of the claim under the facts and circumstances. *See, Hilker, supra,* and *Alt v. American Family Mut. Ins. Co.,* 71 Wis.2d 340, 237 N.W.2d 706 (1976).

Thus, the utilization of this objective standard of whether appropriateness of the denial of the claim is fairly debatable will form the focus of this tort. The Alabama court substitutes the word "arguable" for debatable. *King v. National Foundation Life Ins. Co.,* 541 So.2d 502 (Ala.1989). The logical premise of the debatable (or arguable) standard is that if a realistic question of liability does exist, the insurance carrier is entitled to reasonably pursue that debate without exposure to a claim of violation of its duty of good faith and fair dealing. *White,* 730 P.2d at 1018; *Fehring v. Republic Ins. Co.,* 118 Wis.2d 299, 347 N.W.2d 595 (1984).

■ Moreover, this decision today should not be interpreted as opening the floodgates for awarding punitive damages in each case where the claim of the bad faith tort may be submitted for trial determination.[11] Although we recognize this tort, we

---

11. Apparently, the principal objection of the dissent is to the application of even the very restrictive Wyoming law on punitive damages to adjusting and settlement misconduct of insurance companies who may intentionally or maliciously abuse rights of their policy holders. Outrageous conduct done with malice, bad motives or reckless indifference is neither so hard to define nor impossible to defend in seeking justice for the insured. Economic misconduct of this egregious character is most appropriately corrected by financial responsibility plus, if action was willful and wanton, punitive retribution. Witness recent cases, *Eichenseer v. Reserve Life Ins. Co.,* 881 F.2d 1355 (1989), *reh'g denied* 894 F.2d 1414 (5th Cir.1990) (medical policy denial caused by abjectively mishandled claim procedure); *United Services Auto. Ass'n v. Wade,* 544 So.2d 906 (Ala.1989) (unproved arson defense and incompetent adjustment procedure in denial of fire loss settlement); *Hawkins v.*

*Allstate Ins. Co.,* 152 Ariz. 490, 733 P.2d 1073, *cert. denied* 484 U.S. 874, 108 S.Ct. 212, 98 L.Ed.2d 177, *reh'g denied* 484 U.S. 972, 108 S.Ct. 477, 98 L.Ed.2d 414 (1987) (use of arbitrary add on fee as a deduction from total loss settlement value as a course of conduct in reducing payments to insureds); and *Gourley v. State Farm Mut. Auto. Ins. Co.,* 217 Cal.App.3d 1111, 265 Cal.Rptr. 634 (1990) (use of seat belt defense against own insured when representative of insurer believed defense had a five to ten percent chance of success and realistic settlement was assiduously stonewalled). See, however, *South Carolina Ins. Co. v. McKenzie,* 547 So.2d 25 (Miss.1989), where lack of good faith was not proved and the jury verdict of $475,000 was reduced to $1,813 actual damages. Likewise, see *State Farm Fire & Cas. Co. v. Nicholson,* 777 P.2d 1152, 1158 (Alaska 1989), where that court comprehensively considered and then adopted the tort of bad faith in first-party insurance

believe that the awarding of punitive damages for the tort of bad faith should remain consistent in Wyoming law and require wanton or willful misconduct. *See Mayflower Restaurant Co. v. Griego,* 741 P.2d 1106 (Wyo.1987); *Weaver v. Mitchell,* 715 P.2d 1361 (Wyo.1986); *Arnold,* 707 P.2d 161; and *Waters v. Trenckmann,* 503 P.2d 1187 (Wyo.1972). *Cf. Oukrop v. Wasserburger,* 755 P.2d 233 (Wyo.1988). This posture is also consistent with the Wisconsin application in *Anderson* and other cases where both bad faith and punitive damage may have been claimed.

We do not conclude, however, that the proof of a bad faith cause of action necessarily makes punitive damages appropriate. * * * For punitive damages to be awarded in addition to compensatory damages for the tort, there must be a showing of an evil intent deserving of punishment or something in the nature of special ill-will or wanton disregard of duty or gross or outrageous conduct. In the specific context of the intentional tort of bad faith, exemplary damages are not necessarily appropriate although the plaintiff be entitled to compensatory damages. For punitive damages to be awarded, a defendant must not only intentionally have breached his duty of good faith, but in addition must have been guilty of oppression, fraud, or malice in the special sense defined by *Mid-Continent v. Straka* [47 Wis.2d 739, 178 N.W.2d 28 (Wis.1970)]. *See also, Silberg v. California Life Ins. Co., supra,* 11 Cal.3d [452] at 462, 113 Cal.Rptr. 711, 521 P.2d 1103 [ (C.A.1974)].

*Anderson,* 271 N.W.2d at 379. Likewise, see *Fehring,* 347 N.W.2d 595. *Cf.* Annotation, *Recoverability of Punitive Damages in Action by Insured Against Liability Insurer for Failure to Settle Claim Against Insured,* 85 A.L.R.3d 1211 (1978) and J. McCarthy, *supra,* § 1.57.

cases by following *Gruenberg,* 510 P.2d 1032, and then reversed even a nominal punitive damage award where the insurance company's conduct "[t]o support punitive damages, * * * must be 'outrageous, such as acts done with malice or bad motives or reckless indifference to the in-

## CONCLUSION

Therefore, we recognize the tort of first-party bad faith and answer the first question affirmatively. We answer the second question by implementation of an objective standard of fairly debatable as the test of damage award recovery and retain the higher requirement of present Wyoming law for allowance of punitive damages.

THOMAS, Justice, dissenting.

I, too, dissent from the disposition of this case according to the majority opinion, and I am pleased to join in the perceptive and eminently correct dissenting opinion of Justice Golden. I agree that the rule articulated in *Beck v. Farmers Insurance Exchange,* 701 P.2d 795 (Utah 1985), is a far better policy choice than the choice of a first-party bad faith tort cause of action as adopted in *Gruenberg v. Aetna Insurance Company,* 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032 (1973). I append some thoughts of my own.

My special concern is that in adopting a first-party bad faith cause of action in this instance we may have adopted it for all contractual relationships. The punitive damage claim then would have the same leverage in forcing settlements in all contract cases that it now has in personal injury and other tort cases. One must be reminded of Brer Rabbit's adventure with the Tar-Baby. Joel Chandler Harris, *Uncle Remus, His Songs and His Sayings,* at 7–11 (1880), as printed in Botkin, *A Treasury of American Folklore,* at 653–55 (1944). Once Wyoming realizes that it is stuck to a first-party bad faith cause of action, the efforts to find the legal equivalent of a briar patch where we can extricate ourselves from the Tar-Baby will become quite intense.

While that briar patch may be perceived by many observers as very thorny, it could be as essential to us as the proverbial briar patch was for Brer Rabbit. We might find

terests of another.'" (Quoting *Sturm, Ruger & Co., Inc. v. Day,* 594 P.2d 38, 46 (1979), *overruled on other grounds sub nom. Dura Corp. v. Harned,* 703 P.2d 396 (Alaska 1985).) *Accord Guy v. Commonwealth Life Ins. Co.,* 894 F.2d 1407 (5th Cir.1990).

it to represent a radical adjustment in the concept of punitive damages to the end that punitive damages would be invoked as a true social penalty rather than an enhanced recovery for the individual plaintiff. This approach already has been identified, and legislative models are in place. *E.g.* Colo.Rev.Stat. § 13–21–102(4) (1973); Fla. Stat.Ann. § 768.73(2) (West 1988); Ga.Code Ann. § 51–12–5.1(e)(2) (1987); Ill.Ann.Stat. ch. 110, para. 2–604.1 (Smith–Hurd 1987); Iowa Code Ann. § 668A.1(2)(b) (West 1987); Mo.Ann.Stat. § 537.675 (Vernon 1987); and Or.Rev.Stat. § 18.540 (1988). See Bell and Pearce, *Punitive Damages and the Tort System*, 22 U.Rich.L.Rev. 1 (1987). Other writers suggest this as an alternative to other reform measures such as abrogation of punitive damages altogether. Launie, *The Incidence and Burden of Punitive Damages*, 53 Ins.Couns.J. 46, 50–51 (1986); Sales and Cole, *Punitive Damages: A Relic That Has Outlived Its Origins*, 37 Vand. L.Rev. 1117, 1170 (1984).

The essence of this approach is that any award of punitive damages is directed to the appropriate sovereign to be utilized to address social problems that may, or may not, be related to the misconduct of the defendant. Since it is regarded as a penalty imposed on behalf of the sovereign, the constitutional concept of double jeopardy is invoked so that only one award of punitive damages can be made for a single act of misconduct. Plaintiff's counsel would serve as a private attorney general for this purpose and, while counsel probably would be entitled to compensation for services rendered, the fee awarded may be less than that contracted for by the client.

In achieving the result represented by the majority opinion, the plaintiffs in this litigation may have achieved a true Pyrrhic victory. The gain of the right to assert punitive damages in a breach of contract action well may cost all future plaintiffs the windfall of punitive damages in any action. The punitive and deterrent effect will be maintained for the benefit of the public, but the injured, or damaged, party will have to be content with compensatory damages only. Perhaps that is a salutary result and should be pursued by the legislature in the next legislative session.

GOLDEN, Justice, dissenting, with whom THOMAS, J., joins.

In this first-party insurance setting on a breach of contract theory, the insured recovered from the insurer $3,546.28 in policy proceeds, $10,000 for emotional distress, and $31,309.91 in attorney's fees pursuant to W.S. 26–15–124(c) (June 1983 Repl.).[1] The legislative policy behind this statute is "to encourage [settlements] and to chill any tendencies upon the part of insurance companies to unreasonably reject claims." *State Surety Company v. Lamb Construction Company*, 625 P.2d 184, 188 (Wyo.1981).

The parties to this appeal have no quarrel about the particular elements of damages for which the insured has been compensated upon proving the insurer's breach of the implied obligation of good faith and fair dealing contained in the insurance contract. As ably analyzed and skillfully presented to this court by appellate counsel, the true cutting edge of this certified question is whether the insured is also entitled to a chance to recover punitive damages. If the insured's action against the insurer is identified and treated legally as a tort action, then the insured is entitled to a chance to recover punitive damages under a requisite standard of proof. On the other hand, if the insured's action is deemed to be a breach of contract action only, then the insured is not entitled to a chance to recover punitive damages unless, according to prevailing Wyoming law, the insurer engaged in fraudulent misconduct at the inception of the insurance contract. *United States Through Farmers Home Administration v. Redland*, 695 P.2d 1031, 1039 (Wyo.1985).

To justify the insured's entitlement to a chance to recover punitive damages, the insured argues that the implied obligation of good faith and fair dealing is imposed by law outside the insurance contract itself.

---

1. Formerly W.S. 26–15–126.

The insured asserts that this implied obligation qualifies a tort duty. The insurer's breach of that duty triggers tort damages including, if proved, punitive damages. Litigants, courts and commentators who argue for the extraneous implied obligation concept maintain it is socially desirable in order to deter insurers from engaging in unfair claims practices. In their view, the specter of punitive damages available in a tort action is the form of deterrence best suited to achieve this goal.

In contrast, the insurer maintains the implied obligation of good faith and fair dealing is an integral, not extraneous, part of the insurance contract. The insurer argues that a breach of this integral obligation triggers contract remedies and statutory remedies, chilling an insurer's tendencies to engage in unfair claims practices.

We are asked to choose one concept or the other. The majority has chosen the extraneous implied obligation thesis of *Gruenberg v. Aetna Insurance Company*, 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032 (1973), and adopts the first-party bad faith tort cause of action. Since I disagree with the reasons advanced by the majority, and with the adoption of this new tort cause of action in light of existing breach of contract and statutory remedies, I respectfully dissent.

The strength of the majority opinion is seriously, perhaps fatally, compromised on the first page of the opinion when it expressly adopts the independent tort thesis of *Gruenberg* without analysis, and never again utters one word about the case. I do not understand decision-making that expressly declares reliance on a particular case and then forgoes any discussion about that case for the rest of the opinion. The silence is deafening. Perhaps it is explained by *Gruenberg's* own shaky reliance on two third-party, not first-party, cases.[2] Or, perhaps the silence is explained by the well-reasoned rejection of *Gruenberg's* independent tort thesis by the Utah court in

*Beck v. Farmers Insurance Exchange*, 701 P.2d 795 (Utah 1985). We are left to speculate.

Apart from the majority's failure to analyze *Gruenberg*, the majority advances essentially five reasons in support of its decision. Considered individually or cumulatively, these reasons do not convince me that the time has come in Wyoming for the adoption of the first-party bad faith tort cause of action. The first reason given by the majority is that a consistent thread of Wyoming law, from *Western Casualty and Surety Company v. Fowler*, 390 P.2d 602 (Wyo.1964), to *Arnold v. Mountain West Farm Bureau Mutual Insurance Company, Inc.*, 707 P.2d 161 (Wyo.1985), makes recognition of the tort cause of action structurally consistent and expected. *Western Casualty* was a third-party failure-to-settle case and *Arnold* was an uninsured motorist policy controversy where the appeal concerned only the trial court's refusal to instruct on punitive damages. Neither presented nor decided in either case was the question whether punitive damages may be recoverable in an insurance dispute if the conduct constituting a breach of the insurance contract rises to the level of an independent tort. The facts and issues in *Western Casualty* and *Arnold* are facially and substantively distinguishable from those here. In those cases I find no thread, and certainly no precedential value, with which to weave a golden garment of first-part bad faith tort. Those cases are only threads of straw and, unlike Rumpelstiltskin,[3] the majority cannot spin them into gold. The integrity of the garment woven by a thread of such questionable quality must surely be suspect.

Far more precedential and important to this controversy is *Kahn v. Traders' Insurance Company.*, 4 Wyo. 419, 34 P. 1059 (1893), unexplainably ignored by the majority. In this first-party insurance case, in which this court reversed a district court

**2.** *Comunale v. Traders & General Insurance Company,* 50 Cal.2d 654, 328 P.2d 198 (1958): and *Crisci v. Security Insurance Company of New Haven, Connecticut,* 66 Cal.2d 425, 58 Cal. Rptr. 13, 426 P.2d 173 (1967).

**3.** Rumpelstiltskin, *A Comparative Anthology of Children's Literature* (Holt, Rinehart and Winston, Inc. 1972).

order that vacated a judgment in favor of the insured in an action to recover the proceeds of a fire insurance policy, this court described the implied duty of good faith and fair dealing in these terms:

> Most abundant *good faith is the very essence of these contracts of insurance,* and that requires perfect candor and openness on the part of each of the parties. Insurance companies are just as much bound as the assured to endeavor heartily and strenuously to bring about a fair and a just and equitable settlement of loss incurred, for which they have contracted to indemnify the assured, and they have no sort of right when such loss has occurred to stand aloof and cast obstacles in the way of rather than assist in bringing about such settlement.

*Id.,* 4 Wyo. at 471, 34 P. at 1075. (Emphasis added.)

Since good faith is the very essence of a contract of insurance, that good faith is an integral part of the contractual relationship. It cannot be, then, extraneous to that relationship, arising independently and imposed by law. Rather, the obligation is imposed by the parties themselves and is woven within the fabric of their contractual relationship. *Kahn* is controlling authority for that principle of law. In failing to treat *Kahn* and in relying on *Western Casualty* and *Arnold,* which are easily distinguished and not in point, the underpinnings of the majority opinion are seriously compromised. *Kahn's* theses that good faith is the very essence of an insurance contract and that the parties to the contract are obligated to deal fairly, justly and equitably with each other, arise from the consensual nature of the relationship. This was recognized in *Beck* in which the court rejected *Gruenberg* and refused to adopt the independent tort. In *Beck* the court held that the insured and insurer as parties to the contract have "parallel obligations to perform the contract in good faith, obligations that inhere in every contractual relationship." *Beck,* 701 P.2d at 801. Pointing out the analytical weaknesses of *Gruenberg's* tort approach, *Beck* observed that in the third-party insurance setting a fiduciary relationship between insurer and insured exists which does not exist in the first-party insurance setting, where the insurer-insured relationship is, practically speaking, adversarial in nature. Thus, it is conceptually unsound to transfer the third-party rationale to justify the first-party thesis.

The second reason given by the majority in support of its decision is that the insurance contract is one of those special classes of contracts that create a relationship out of which certain duties arise as implied by law independently of the express terms of the contract. As authority for this proposition, the majority offers *Tate v. Mountain States Telephone and Telegraph Company,* 647 P.2d 58 (Wyo.1982).

I have several problems with the majority's use of *Tate* in this context. First, *Tate* was a telephone company case, not a first-party insurance case. Second, *Kahn,* a first-party insurance case, as controlling authority, holds that the parties' duties to deal with each other in good faith is the very essence of the insurance contract. Since those reciprocal duties are integral to the contractual relationship, they cannot arise as implied by law independently of, or extraneous to, that contract. Therefore, in the insurance contract context, *Tate* is not authoritative in light of *Kahn.* Third, the majority does not bother to explain how or why the insurance contract is one of those special classes of contracts referred to in *Tate.* "Bold assertion masquerades as reasoning. The object, quite clearly, is not to persuade, but to prevail." *Webster v. Reproductive Health Services,* — U.S. —, —, 109 S.Ct. 3040, 3072, 106 L.Ed.2d 410, 449, (1989) (Blackmun, J., concurring in part and dissenting in part, with whom Brennan, J. and Marshall, J., join).

The third reason given by the majority is that recognition of the tort cause of action is justified on the bases of the public service nature of the insurance business and the unequal bargaining relationship between insurer and insured. On this latter basis, the majority claims that this court, by adopting a rule of contract construction favoring the insured, at least inferentially recognized that insurance contracts involve

unequal bargaining power. I find no analysis in the cited Wyoming cases involving rules of insurance contract construction that expresses the "unequal bargaining power" rationale. Instead, I find that this court applies the same general rules of contract construction routinely in cases involving different types of contracts, not just insurance contracts. Consequently, I question whether the majority can legitimately draw that inference. The rule favoring the insured is invoked only when ambiguity exists, simply because the insurer wrote the contract. This is consistent with the general rule in all contract cases where the contract is construed against the party who wrote it. The rule favoring the insured is not invoked because of the insurer's perceived greater bargaining power. None of our past insurance contract cases advance that rationale.

I find it telling that the majority also primarily relies on *Hilker v. Western Automobile Insurance Co. of Ft. Scott, Kan.*, 204 Wis. 1, 231 N.W. 257 (1930), *reh.*, 204 Wis. 1, 235 N.W. 413 (1931), decided before the surge of state governmental regulation of the insurance business in the form of legislation, administrative rule-making, and judicially created doctrines. One of the aims of that regulation is to avoid the insurer's overreaching. K. Abraham, *Distributing Risk*, 37–43 (Yale University Press 1986); R. Keeton, *Basic Text on Insurance Law*, 537–43 (West Pub.Co. 1971). Without a moment's consideration of Wyoming's statutory scheme of governmental regulation of the insurance business conducted in this state and its effect on the public service and greater bargaining power aspects of the issue at hand, the majority simply declares that the first-party bad faith tort is justified in Wyoming. "This 'it-is-so-because-we-say-so' jurisprudence constitutes nothing other than an attempted exercise of brute force; reason, much less persuasion, has no place." *Webster*, — U.S. at —, 109 S.Ct. at 3075, 106 L.Ed.2d at 458. I find no analysis whatsoever of *why* this new cause of action is justified in this state. Cutting to the heart of the matter, I find no analysis of why the specter of punitive damages is the treat-

ment of choice to check the insurer's tendencies to engage in unfair claims practices. The majority opinion simply does not demonstrate that existing breach of contract remedies along with the statutory remedies of imposition of attorney's fees and interest on the amount of the judgment are inadequate or are not achieving the desired objective of chilling the insurer's bad faith tendencies.

The fourth reason advanced in the majority opinion is that a tort protected duty provides "additional impetus for good faith." As with the other reasons offered by the majority, its analysis of this reason is deficient. We are given neither explanation nor demonstration of why this "additional impetus" is necessary in Wyoming. As the majority opinion notes, Wyoming generally recognizes the benefit of the bargain damages in breach of contract cases. In *Robert W. Anderson Housewrecking and Excavating, Inc. v. Board of Trustees, School District No. 25, Fremont County, Wyoming*, 681 P.2d 1326, 1333 (Wyo.1984), this court said:

> Damages for breach of contract are calculated to put the plaintiff in the same position as if the contract had been performed, less proper deductions. The damage should compensate for the loss which would have been prevented by a full performance of the contract.

Earlier, in *Panhandle Eastern Pipeline Company v. Smith*, 637 P.2d 1020, 1027 (Wyo.1981), this court recognized that "the rules of law on recovery of damages for breach of contract have to be very flexible." The court quoted favorably from 5 *Corbin on Contracts*, § 1002, at 33 (1964), to the effect that contract damages rules "must be regarded merely as guides to the court, leaving much to the feeling of the court created by the special circumstances of the particular case." Thus, *Corbin* informs us:

> There is sufficient authority to justify the statement that damages will be awarded for mental suffering caused by the wanton or reckless breach of a contract to render a performance of such a character that the promisor had reason

to know when the contract was made that a breach would cause such suffering, for reasons other than mere pecuniary loss.

*Id.* at § 1076, at 429. See, e.g., the first-party insurance cases of *Cassady v. United Insurance Company*, 370 F.Supp. 388 (W.D.Ark.1974); *Kewin v. Massachusetts Mutual Life Insurance Company*, 409 Mich. 401, 295 N.W.2d 50 (1980); and *Beck.* I am in agreement with that said in *Beck:* "In an action for breach of a duty to bargain in good faith, a broad range of recoverable damages is conceivable, particularly given the unique nature and purpose of an insurance contract." *Beck*, 701 P.2d at 802. In view of the broad range of compensatory damages available in a contract action and in view of the statutorily provided remedies of interest on the judgment and attorney's fees, I believe sufficient motivation presently exists to stifle an insurer's bad faith tendencies without the further imposition of the specter of punitive damages under an independent tort cause of action.

The final reason given by the majority opinion is expressed in terms of rejection of a notion of statutory preemption. Thus, since Wyoming's statutory remedies, in the form of W.S. 26–13–124 (Cum.Supp.1988) and 25–15–124(c) and the entire insurance code,[4] do not provide the same scope of remedies as found in the bad faith tort remedy, the majority simply declares, without benefit of justification, that an increased scope of remedies is desired. That increased scope is punitive damages. As with its analysis of the other four reasons, the majority offers no persuasive explanation why this increased scope of remedies is necessary. Once again, "bald assertion masquerades as reasoning."

In conclusion, I am not convinced that Wyoming must adopt the first-party bad faith tort to accomplish what is already being accomplished under existing Wyoming law. I am reminded that "the danger to the jury system from society and its representative members of the legislature, arises from uncontrolled litigative excesses, unjustified in the logic of the law of tort or by the facts of the case. There is an abrogation of judicial responsibility which is uniformly resulting nationwide in attacks on the jury system. The vitality and suitability of the jury system remains unchallenged, but it is the timidity of the judiciary to control excesses that is being called into account." (Urbigkit, J., dissenting, in *Clarke v. Vandermeer*, 740 P.2d 921, 929 (Wyo.1987), quoting Resnik, *Failing Faith: Adjudicatory Procedure in Decline*, 53 U.Chi.L.Rev. 494, 556 (1986)).

4. W.S. 26–1–101 through 26–33–111 (June 1983 Repl.).