Argued and submitted April 8, affirmed August 25, 1982

**PORTER,**
*Respondent - Cross-Appellant,*

*v.*

**UTAH HOME FIRE INSURANCE COMPANY,**
*Appellant - Cross-Respondent.*

(No. A8105-02933 CA A22609)

650 P2d 130

Randall B. Kester, Portland, argued the cause and filed the briefs for appellant - cross-respondent. With him on the briefs were Eugene H. Buckle and Cosgrave, Kester, Crowe, Gidley & Lagesen, Portland.

William F. Schulte, Portland, argued the cause and filed the briefs for respondent - cross-appellant.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

YOUNG, J.

## YOUNG, J.

Defendant appeals from a judgment authorizing the "stacking" of statutorily mandated personal injury protection (PIP) benefits, ORS 743.810, provided by the automobile liability insurance coverage of defendant and another insurer. Plaintiff cross-appeals from the dismissal of her claim for consequential and punitive damages.[1] We affirm.

The parties have submitted an agreed narrative statement of facts pursuant to ORAP 6.50. On July 1, 1980, Sandoval, plaintiff's decedent, was injured in an automobile accident that resulted in his death. Sandoval's medical expenses exceeded $10,000, and funeral expenses were more than $2,000. At the time of the accident, Sandoval was a passenger in an automobile that was insured by Leader National Insurance company (Leader National). Sandoval was an insured under a policy issued by defendant. Leader National paid its PIP benefit limits of $5,000 medical expenses and $1,000 funeral expenses. Plaintiff, as Sandoval's personal representative, claimed additional PIP benefits of $5,000 medical and $1,000 funeral expenses under defendant's policy. The parties also agreed that, pursuant to ORS 743.810, the PIP benefits paid by Leader National are "primary," ORS 743.810(1)(b), and defendant's PIP benefits are "excess." ORS 743.810(1)(d).[2]

■ Defendant argues that there is no statutory authority under the Oregon Insurance Code to permit stacking of PIP benefits.[3] The issue is straightforward. When the damages are greater than the PIP benefits designated by ORS 743.810(1) as "primary," is defendant liable for the

---

[1] Plaintiff commenced an action on the automobile liability insurance policy issued by defendant. There were cross-motions for partial summary judgment on the issue of contractual liability, and plaintiff's motion was granted. The trial judge entered a judgment in favor of plaintiff on the partial summary judgment and in favor of defendant on its motion to dismiss plaintiff's claim for punitive damages. Accordingly, the appeal is from a final judgment. ORS 19.010(2)(e).

[2] Before beginning our analysis, we point out that this is not a case of an "other insurance" clause in a liability insurance policy as was considered in *Lamb-Weston et al v. Ore Auto Ins Co.*, 219 Or 110, 341 P2d 110, 346 P2d 643 (1959).

[3] Defendant's policy provisions follow ORS 743.810 by declaring defendant's PIP benefits as excess coverage when defendant's insured is occupying a non-owned automobile.

"excess" damages to the limits of its coverage? On the basis of ORS 743.810, we hold that defendant is liable.

ORS 743.810, as amended by Or Laws 1975, ch 784, § 3, provides:

"(1) The personal injury protection benefits with respect to:

"(a) The insured and members of his family residing in the same household injured while occupying the insured motor vehicle shall be primary.

"(b) Passengers injured while occupying the insured motor vehicle shall be primary.

"(c) The insured and members of his family residing in the same household injured as pedestrians shall be primary.

"(d) The insured and members of his family residing in the same household injured while occupying a motor vehicle not insured under the policy shall be excess.

"(e) Pedestrians injured by the insured motor vehicle, other than the insured and members of his family residing in the same household, shall be excess over any other collateral benefits to which the injured person is entitled, including but not limited to insurance benefits, governmental benefits or gratuitous benefits.

"(2) The personal injury protection benefits may be reduced or eliminated, if it is so provided in the policy, when the injured person is entitled to receive, under the laws of this state or any other state or the United States, workers' compensation benefits or any other similar medical or disability benefits."

Defendant relies on *Southwestern Ins. Co. v. Winn*, 274 Or 695, 548 P2d 1311 (1976), which was decided under the 1973 version of ORS 743.810(1), Or Laws 1973, ch 551, § 4, which provided:

"The benefits required by ORS 743.800 with respect to:

"(1) The insured, members of his family residing in the same household and guest passengers injured while occupying the insured motor vehicle shall be primary, but such benefits except for guest passengers may be reduced or eliminated if they are similarly provided under another motor vehicle liability policy that covers the injured person, or if the injured person is entitled to receive under the

laws of this state or any other state or of the United States, workmen's compensation benefits or any other similar medical or disability benefits.

"(2)   Pedestrians injured by the insured motor vehicle may be excess over any other collateral benefits to which the injured person is entitled, including but not limited to insurance benefits, governmental benefits or gratuitous benefits."

The facts in *Southwestern* are essentially identical to the facts in the present action. Southwestern's insured, Winn, was a passenger in an automobile insured by Farmers Insurance Company (Farmers). Winn incurred medical expenses in excess of the PIP benefits provided by Farmers. Farmers paid Winn its PIP limits, and Winn made a claim for additional PIP benefits as the insured under Southwestern's policy. The court held that, because Winn was the insured in the policy issued by Southwestern, Southwestern was entitled, under the then version of ORS 743.810(1), to reduce or eliminate benefits that had been "similarly provided under another motor vehicle liability policy that covers the insured person, to-wit: Farmer's policy."[4] The dispositive statutory phrase, "* * * if they are similarly provided under another motor vehicle liability policy that covers the injured person," was eliminated by the 1975 amendments to ORS 743.810(1).

The legislative history of the 1975 amendments to ORS ch 743 includes a "Commentary on Oregon PIP Benefits" submitted by the Insurance Commissioner. The relevant portions of the commentary concerning the amendments to ORS 743.810, which are set out in the margin,[5]

---

[4] In *Southwestern Ins. Co. v. Winn, supra,* the court gratuitously observed that ORS 743.810(1), as amended by Or Laws 1975, ch 784, § 3, may require a different result.

[5]

"*Section 3 (ORS 743.810). Order of benefit payment.*

"This section assigns the obligation of PIP benefit payment when more than one insurance policy covers the injured person, and allows an offset provision in the policy for benefits of the workmen's compensation type.

"The 1975 Act makes the PIP benefits under the policy covering a particular car primary for all passengers in that car instead of excluding non-guest passengers, to agree with the Section 1 change in scope of PIP coverage.

appear to address, *inter alia,* multiple or double recovery situations. We find no statement in the commentary that expresses an intent to permit or to preclude the stacking of PIP benefits when the damages exceed the limits of the primary coverage.

The legislature has addressed stacking with respect to double recovery of benefits. ORS 743.835 prevents double recovery by providing for the reduction or offset of PIP benefits from uninsured motorist coverage. Similarly, PIP benefits may be offset against liability coverage. ORS 743.828 and 743.830. ORS 743.792(9) prohibits the stacking of uninsured motorist benefits. None of these statutes

---

"The present provision that benefits for the insured and members of his family 'may be reduced or eliminated' when there also is coverage by another motor vehicle liability policy is changed in favor of a 'primary-excess' procedure, which is more definite. The 'guest passenger' exception, added in 1973 to allow the handling of guest passenger PIP benefits under the accident claim file for the insured car, appears to allow multiple recoveries by guest passengers and has been eliminated by the new 'primary-excess' procedure.

"The existing law is silent on the treatment of the insured and his family when injured as pedestrians, unless the phrase 'while occupying the insured motor vehicle' in the present subsection (1) is taken to apply only to 'guest passengers' and not to the insured and his family. In any event, primary coverage by the insured's own policy seems entirely logical and has been incorporated in this 1975 Act.

"If the phrase 'while occupying the insured motor vehicle' applies not to 'guest passengers' only, then coverage under the insured's own policy now is primary for him and his family regardless of the car they are occupying * * *. It seems more likely, however, that primary coverage under a policy was intended only when they occupy a car insured under that policy, and this view is consistent with the treatment of guest passengers in the existing law and of all passengers in the 1975 Act. Thus, the excess coverage treatment under a policy for the insured and his family when occupying cars not insured under that policy is set forth clearly in the 1975 Act.

"The 1975 Act provides for the insured and his family to be covered for PIP benefits in any motor vehicle accident, whether or not the motor vehicle they occupy is a 'private passenger' motor vehicle. This seems consistent with the scope of OR 743.800. The existing language of ORS 743.810 is silent on this point.

"Pedestrian benefits for persons other than the insured and his family have been made excess under the 1975 Act, which is the permitted treatment under existing law. However, 'governmental benefits or gratuitous benefits' would no longer be taken into consideration except for the workmen's compensation offset.

"The provision for benefit reduction by reason of workmen's compensation and similar benefits has been carried forward without change. Some question has been raised about the scope of this reduction provision, but it seems clear that only statutory benefits for medical expenses and disability arising from occupational accidents are contemplated."

addresses the issue here, and they are not helpful to the analysis.

In Southwestern Ins. Co. v. Winn, supra, the court hypothesized that, if the excess policy provided coverage in excess of the primary policy coverage, then the excess policy would be applicable to the extent that its coverage exceeded the coverage provided by the primary insurer.[6] We understand defendant's argument, based on that hypothesis, to be that if the coverage provided by the excess insurer is equal to the coverage provided by the primary insurer, then there is no excess coverage available to the injured person. In other words, in order to accept defendant's analysis we would have to conclude that the designation of the PIP benefits as "primary" or as "excess" by ORS 743.810(1) identifies only the relationship between the insurers when the coverage is identical and does not relate to the benefits available to the injured party. There is no statutory requirement that, before excess PIP benefits are triggered for payment, the excess insurance coverage must be greater than the primary insurance coverage.

The insurance code is for protection of the insurance-buying public, ORS 731.008, and it is liberally construed to give effect to that policy. ORS 731.016. Plaintiff's decedent is entitled to the insurance protection that he may reasonably expect for the premiums paid. The result that we have reached promotes the legislative policy. The trial court correctly granted plaintiff a partial summary judgment on the issue of contractual liability.

Plaintiff argues on her cross-appeal that it was error to dismiss her claim for consequential and punitive damages from her supplemental complaint. The pleadings require a brief explanation. Plaintiff's initial complaint was for breach of the insurance contract, and she sought recovery of PIP benefits, attorney fees and costs. Defendant filed a general denial, admitting its corporate status, its authority to transact business in Oregon and that defendant issued a vehicle liability policy to William D. Porter.[7]

---

[6] An automobile liability insurer may provide PIP coverage in excess of the statutorily mandated minimum coverage. ORS 743.820.

[7] William D. Porter is the step-father of Sandoval, the deceased. The parties agree in their narrative statement that Sandoval was an insured under the Porter policy.

Defendant alleged as an affirmative defense that the injuries incurred by Sandoval were intentionally caused by Sandoval himself, for which there is an exclusion from PIP coverage under defendant's policy. Plaintiff filed a supplemental complaint claiming additional damage for loss of use of the unpaid PIP benefits (claiming 18 percent annual interest until the benefits were paid)[8] and punitive damages.

In her brief, plaintiff contends that she alleged, in substance, "fraud in the inception of the insurance policy contract, and a fraudulent refusal to pay the contractual benefits when due; and allegations of malicious misconduct, outrageous misconduct, oppression, neglect and bad faith" against defendant. The trial court dismissed the claim for loss of use and punitive damages for failure to state a claim. ORCP 21A.

Defendant argues that plaintiff, in support of her claim for punitive damages, has alleged a "bad faith" refusal on the part of defendant to pay PIP benefits. Defendant contends that a bad faith refusal to pay, absent a fiduciary duty, is not actionable, relying on *Farris v. U.S. Fid. and Guar. Co.,* 284 Or 453, 587 P2d 1015 (1978), where the court was dealing with a breach of contract claim and concluded, *inter alia,* that punitive damages were generally not recoverable. 284 Or at 466.

In *Santilli v. State Farm,* 278 Or 53, 562 P2d 965 (1977), a case involving a first party claim,[9] the court dealt with a tort for the bad faith refusal to pay an insurance claim. The action was characterized as a "tortious breach of an insurer's duty of good faith and fair dealing when dealing with its insured." The court discussed the development of the tort of bad faith refusal to pay benefits and the rationale for distinguishing between first party and third

---

[8] Because we hold that plaintiff is entitled to recover PIP benefits from defendant, plaintiff is entitled to interest at the legal rate on the recovery.

[9] We characterize plaintiff's claim on behalf of Sandoval as a first party claim. That is, the insured seeks indemnification from his own insurer for personal losses as contrasted with those situations when a third party brings a claim against the insured for an amount exceeding the policy limits. For an analysis of "bad faith" in contract and tort actions in the context of first and third party claims, *see* 17 Will L J 577 (1981) and 57 Or L Rev 590 (1978).

party claims.[10] *Santilli* did not, however, decide whether the tort would be recognized in this jurisdiction. We have found no later Oregon case that directly considers whether the tort of bad faith refusal to pay benefits is viable in Oregon.

Plaintiff cites as authority for Oregon's recognition of the tort *Green v. State Farm Fire and Cas. Co.*, 667 F2d 22 (9th Cir 1982). There, the insured brought a tort action against the insurer for outrageous conduct, alleging severe emotional distress. Judge Goodwin, writing for the court, observed that the tort of outrageous conduct has been recognized in Oregon. *Turman v. Central Billing Bureau, Inc.*, 279 Or 443, 568 P2d 1382 (1977); *Rockhill v. Pollard*, 259 Or 54, 485 P2d 28 (1971). In response to the insurer's argument that *Farris v. U.S. Fid. and Guar. Co., supra,* and *Santilli v. State Farm, supra,* show "an unwillingness or reluctance" to recognize the tort of outrageous conduct in first party insurance transactions, the court said:

> "Neither *Farris* nor *Santilli,* however, mentions either tort or outrageous conduct. *Farris* involved a breach of contract claim and *Santilli* dealt with bad faith failure to pay a claim. Oregon law is not 'reluctant' to recognize the tort of outrageous conduct when the facts of the case so indicate, whether or not the defendant is an insurance company." 667 F2d at 24.

*Green* is not dispositive. For the tort of outrageous conduct to be actionable, plaintiff must show outrageous conduct and also that plaintiff suffered emotional distress. *Rockhill v. Pollard, supra,* 259 Or at 63. Plaintiff does not claim damage as a result of emotional distress, nor could she in her capacity as personal representative of Sandoval's estate.

Although no one could seriously argue that when an insurer merely denies payment of its insured's claim that the denial will give rise to a tort action, we believe that, if the insurer has engaged in egregious conduct, then that conduct would give rise to a tort action and the recovery of exemplary damages. *See Green v. State Farm*

---

[10] *See Groce v. Fidelity General Insurance,* 252 Or 296, 311-12, 448 P2d 554 (1969), a third-party excess liability claim, where the court recognized an insurer's duty to use good faith when seeking to settle litigation within the policy limits as a duty arising out of the contract of insurance.

*Fire & Casualty Co., supra.* In the present case, however, plaintiff's allegations of "bad faith" are easily disposed of: (1) Defendant originally asserted the named-operator provision of the policy as excluding PIP coverage; however, the parties have now stipulated that Sandoval is an insured under defendant's policy. (2) PIP benefits in Oregon shall be stacked, and defendant has deliberately failed to comply with the law in that regard; however, until the present action, there was no Oregon decision either allowing or disallowing the stacking of PIP benefits. (3) Defendant raised an affirmative defense of a policy exclusion. It is obvious that there were, until this action was filed, important and unanswered questions concerning the stacking of PIP benefits. Moreover, we can find nothing that smacks of either bad faith or egregious conduct when the insurer pleaded the policy exclusion as a defense.

In sum, the trial court did not err when it granted defendant's motion to dismiss the claim for punitive damages for failure to state ultimate facts sufficient to constitute a claim.

Affirmed.