Argued and submitted December 3, 1982, affirmed on appeal, reversed and remanded on cross appeal with instructions October 5, 1983

## The EMPLOYERS' FIRE INSURANCE COMPANY,
*Appellant - Cross-Respondent,*

*v.*

## LOVE IT ICE CREAM CO.,
*Respondent - Cross-Appellant.*

### (A7906-02629; CA A21553)

670 P2d 160

I. Franklin Hunsaker, Portland, argued the cause for appellant - cross-respondent. With him on the briefs were Mary T. Danford, Douglas G. Houser, and Bullivant, Wright, Leedy, Johnson, Pendergrass & Hoffman, Portland.

Michael J. Esler and Kim T. Buckley, Portland, argued the cause for respondent - cross-appellant. On the briefs were John W. Stephens and Esler & Schneider, Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

Plaintiff appeals and defendant cross-appeals from a judgment order entered in favor of defendant, a corporation engaged in the manufacturing and marketing of ice cream products. Plaintiff is defendant's insurer under a fire insurance policy. This appeal arises out of a declaratory judgment action filed by plaintiff, alleging that defendant is not entitled to recover for a claimed fire loss, because it intentionally caused the fire and made intentional misrepresentations concerning the cause of the fire and the amount of the loss. Defendant raised three counterclaims: breach of contract, wilful and malicious interference with prospective economic advantage and bad faith refusal to settle. Defendant requested compensatory and punitive damages, attorney fees and prejudgment interest.

Plaintiff moved to strike defendant's tortious interference and bad faith counterclaims on the ground that they failed to state a claim for relief. The trial court granted the motions. Defendant amended its answer, removing the stricken counterclaims. In its answer to defendant's breach of contract counterclaim, plaintiff moved to dismiss it on the grounds that defendant lacked the capacity to sue and that the counterclaim was barred by the statute of limitations. The trial court denied the motion. After a jury trial, the court entered a judgment for defendant for approximately $127,000, plus attorney fees and prejudgment interest at 6 percent per annum.

Plaintiff assigns as error the trial court's denial of its motion to dismiss defendant's breach of contract counterclaim and the award of prejudgment interest. Defendant asserts that the trial court erred by setting the wrong rate for prejudgment interest and by granting the motion to strike the bad faith and tortious interference counterclaims. Defendant also asserts that we should assess a 10 percent penalty against plaintiff under ORS 19.160 for bringing an appeal without probable cause. We consider these issues in turn.

Plaintiff argues that the trial court should have dismissed defendant's breach of contract counterclaim, because defendant lacked the capacity to file the counterclaim before the time had expired for bringing an action on a fire insurance

policy. The fire insurance policy contained the one-year period for bringing an action mandated by ORS 743.660:

"A fire insurance policy shall contain a provision as follows: 'No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within 12 months next after inception of the loss.' "

The facts applicable to defendant's argument are undisputed. The fire occurred on January 9, 1979. Plaintiff filed this action in June, 1979. In November, 1979, defendant filed suit in federal court, raising the same claims it raised later in the present action as counterclaims. The federal action was stayed pending the outcome of this action. In February, 1980, defendant filed its counterclaims. Defendant was a delinquent corporation under former ORS 57.779 (*repealed by* Or Laws 1981, ch 633, § 83) from October, 1978, to October, 1980, when it was involuntarily dissolved under ORS 57.585. In January, 1981, defendant was reinstated as a corporation in good standing under ORS 57.585(3). In March, 1981, the court allowed defendant to file its second amended answer that alleged that it had been reinstated and the three counterclaims.

■ Whether or not defendant's status as a delinquent corporation precluded it from filing counterclaims in February, 1980, or its federal court action tolled the running of the one-year period, we conclude that defendant was not barred from filing its counterclaims in March, 1981. At that time, defendant was not a delinquent corporation, so it had legal capacity to sue. Defendant's counterclaims arose out of the subject matter contained in the complaint which was filed less than one year after the fire. Therefore, the counterclaims were not time barred, because they relate back to the filing of plaintiff's complaint. *Lewis v. Merrill,* 228 Or 541, 549, 365 P2d 1052 (1961); *Carter v. Wolf Creek Hwy.,* 54 Or App 569, 573-74, 635 P2d 1036 (1981).

Plaintiff argues that the trial court erred in awarding defendant prejudgment interest.

"The controlling rule for the allowance of prejudgment interest is found in *Public Market Co. v. Portland,* 171 Or 522, 625, 130 P2d 624, 138 P2d 916 (1943), which held it can be allowed only

" "* * * [w]here "the demand is of such a nature that its exact pecuniary amount was either *ascertained, or ascertainable* by simple computation, or by reference to generally recognized standards such as market price," and where "the time for which interest, if allowed, must run,—that is, a time of definite default or tort-feasance,—can be ascertained." ' (Quoting 1 Sedg. on Damages (9th Ed), 571, § 300; emphasis in original)." *Arden-Mayfair v. Patterson,* 46 Or App 849, 857, 613 P2d 1062, *rev den* 290 Or 149 (1980).

The parties agree that interest, if allowed, should run from July 23, 1979.

▮     Plaintiff contends that the amount due under the policy was not easily ascertainable, because it contested its liability for coverage and defendant's claim for lost profits at trial and because some of the items destroyed in the fire could not be valued by market price. Defendant's proof of loss and breach of contract counterclaim contained claims for three kinds of coverage under the policy: casualty loss, extra expenses incurred to continue normal business operations and lost profits. Plaintiff attempted to avoid liability for the entire contract by claiming that defendant intentionally caused the fire and made intentional misrepresentations. The fact that liability for the entire amount is contested, however, does not preclude an award of prejudgment interest. *McKean v. Bernard,* 54 Or App 540, 547-48, 635 P2d 673 (1981); *Carlson v. Blumenstein,* 54 Or App 380, 384-85, 635 P2d 380 (1981), *mod on other grounds,* 293 Or 494 (1982). That plaintiff contested defendant's claim for lost profits is not determinative, because the jury awarded damages only for casualty loss and extra expenses. According to defendant, the amount of the casualty loss and extra expenses was not contested by plaintiff at trial. In its briefs, plaintiff does not challenge that contention or point to specific disputes at trial as to the value of the claimed losses or expenses. We decline to search the record to determine whether any such disputes existed. Therefore, we hold that the trial court did not err in concluding that defendant was entitled to prejudgment interest.

▮▮     We conclude, however, that defendant's contention on cross-appeal is correct and that the trial court erred in setting the rate for the prejudgment interest at 6 percent per annum from July 23, 1979, until the date of judgment. The

version of ORS 82.010 in effect on July 23, 1979, provided for prejudgment interest at a rate of 6 percent per year. That statute was amended, effective July 25, 1979, to increase the rate of interest to 9 percent per annum. Judgment in this case was entered after July 25, 1979. The contract here was not a contract for the repayment of money owed to another, for which the interest rate at the time the contract was entered into governs. *Graham v. Merchant,* 43 Or 294, 311-13, 72 P 1088 (1903). Therefore, defendant was entitled to prejudgment interest at a rate of 6 percent per year for July 23 and 24, 1979, and 9 percent per year from July 25, 1979, until the date of the judgment. *See Graham v. Merchant, supra; Illingworth v. Bushong,* 61 Or App 152, 157, 656 P2d 370 (1982), *rev allowed* 294 Or 613 (1983).

In its cross-appeal, defendant asserts that the trial court erred in dismissing its bad faith and tortious interference counterclaims. Defendant relied essentially on the following allegations for both counterclaims:

"18.  Instead of performing its obligations under the insurance policy, plaintiff * * * filed this action, seeking a declaratory judgment cancelling said insurance obligations. Plaintiff * * * caused the Complaint herein to be filed without probable cause and with knowledge that the fire was not intentionally caused. * * *

"19.  The action was brought for the sole purpose of delaying payment of defendant's claims. * * *

"* * * * *

"21.  Plaintiff's dilatory tactics were made willfully, maliciously, and intentionally for the purpose of interfering with defendant's business, and preventing defendant from resuming its business, thereby disabling defendant from asserting valuable rights under the insurance policy, including the cost of replacing equipment and leasehold improvements, business interruption and extra expenses of continuing business thereby depriving defendant of the benefits of insurance coverage it intended to purchase when it paid the agreed premiums.

"22.  Plaintiff's actions were willful and malicious or with reckless disregard for the rights of defendant. Exemplary damages should be assessed against plaintiff in the amount of $1,000,000.00."

■     In its bad faith counterclaim, defendant also alleged that plaintiff "willfully and maliciously breached" its "legal and statutory duty to settle defendant's claim promptly and in good faith." Defendant alleges facts that, if true, would lead any reasonable jury to conclude that plaintiff was guilty of "bad faith." However, the violation of ORS 746.230(1)(f), which requires insurers to settle claims promptly and in good faith where their liability is reasonably clear, does not give rise to a tort action. *Bob Godfrey Pontiac v. Roloff,* 291 Or 318, 328, 630 P2d 840 (1981); *Farris v. U.S. Fid. and Guar. Co.,* 284 Or 453, 458, 587 P2d 1015 (1978). Therefore, the question is whether Oregon has recognized the common law tort of bad faith for an insurer's refusal to settle a claim by its insured.

Three Oregon cases address this question. In *Santilli v. State Farm,* 278 Or 53, 562 P2d 965 (1977), the plaintiff alleged a cause of action in tort for the defendant's bad faith refusal to pay the proceeds due under a life insurance policy. The court discussed the difference between the type of bad faith alleged (first party) and the tort of bad faith refusal to settle with a third party within the limits of a liability policy (third party), a tort that is recognized in Oregon. The court did not decide whether the tort of first party bad faith was recognized in Oregon, because it held that there was no evidence that the insurer had acted in bad faith.

In *Farris v. U.S. Fid. and Guar. Co., supra,* the court held that an insurer's bad faith refusal to defend its insured under a liability policy gives rise only to a breach of contract claim, for which punitive and emotional distress damages cannot be recovered, rather than a tort claim. In *Farris,* the insurer refused to perform its obligation to defend, knowing that it had no good reason not to perform. The court relied on the rationale it expressed in *Santilli* that, although an insurer's breach of a fiduciary duty to its insured, which is present in third-party claims but not in first-party claims, gives rise to tort liability, no liability results from an insurer's bad faith breach of its contract with its own insured.

> "Contrary to the California holdings, for the reasons given in *Santilli,* we believe defendant's failure to undertake representation of plaintiffs which required them to represent themselves *could only have been a breach of contract,* * * *." 284 Or at 464-65. (Emphasis supplied.)

■    Defendant argues that we limited the *Farris* holding and recognized the tort of first party bad faith in *Porter v. Utah Home Fire Insurance Co.*, 58 Or App 729, 650 P2d 130 (1982). Aside from whether this court could limit a Supreme Court holding, defendant misconstrues our holding. In *Porter,* the trial court dismissed the plaintiff's claim for punitive damages based on the insurer's refusal to pay benefits under the policy. We noted that, if an insurer engages in egregious conduct, that conduct could give rise to a tort action and punitive damages. We held, however, that the trial court did not err, because the plaintiff failed to allege acts of bad faith or egregious conduct. Any language in *Porter* implying that the tort of first-party bad faith, absent egregious acts amounting to outrageous conduct, is actionable in Oregon was dictum. We hold that, under *Farris,* an insurer's bad faith refusal to pay policy benefits to its insured sounds in contract and is not an actionable tort in Oregon.

Nothing in *Farris,* however, precludes an insured from bringing a tort action against its insurer for wrongful interference with business relationships. In *Straube v. Larson,* 287 Or 357, 600 P2d 371 (1979), the court discussed the nature of the tort of interference with business relationship:

"* * * Intentional interference in pursuit of an improper objective or the use of wrongful means of interference that in fact cause injury to a plaintiff's professional or business relationships usually gives rise to a tort claim. Interference with a business relationship is an intentional tort. * * *" 287 Or at 360.

In *Top Service Body Shop v. Allstate Ins. Co.,* 283 Or 201, 582 P2d 1365 (1978), the court addressed the elements of the tort:

"* * * [S]uch a claim is made out when interference resulting in injury to another is wrongful by some measure beyond the fact of the interference itself. Defendant's liability may arise from improper motives or from the use of improper means. They may be wrongful by reason of a statute or other regulation, or a recognized rule of common law, or perhaps an established standard of a trade or profession. * * *" 283 Or at 209-10. (Footnote omitted.)

"Improper means" includes unfounded litigation. 283 Or at 210 n 11; *Leigh Furniture and Carpet Co. v. Isom,* 657 P2d 293, 308-09 (Utah 1982) (citing *Top Service.*)

■ Defendant's allegations were sufficient to make out a tort claim for interference with business relationships through the use of improper means: plaintiff filed litigation which it knew to be unfounded for the purpose of delaying payment of defendant's claim and that it did so with the intention that, by its delaying payment, defendant would be unable to resume its business of marketing ice cream products, thereby reducing the amount that plaintiff would be required to pay under its policy, *e.g.,* the cost of replacing equipment and leasehold improvements, business interruption and extra expenses of continuing business.

We reject plaintiff's argument that defendant failed to state a claim because it did not allege that plaintiff interfered with a specific business relationship with a third party. Such specificity was not necessary, because defendant did allege that plaintiff's interference prevented defendant from resuming its business. Under this allegation, defendant could offer evidence that it was unable to continue to serve its former or prospective customers. Consequently, the trial court erred in granting the motion to strike defendant's tortious interference counterclaim.

Plaintiff argues that, if the trial court erred in granting the motion to strike, the error was harmless, because the damages defendant could have recovered under its tortious interference counterclaim were the same as those it pled and attempted to prove on its breach of contract counterclaim. Defendant responds that, because it did not have a continuing business, it was entitled under its contract only to the actual cash value of equipment destroyed. Had the business continued, defendant contends, it would have been entitled to the replacement costs of equipment and improvements, which may have greatly exceeded actual cash value, as well as other benefits under the policy.

■ Although defendant did not plead with specificity in the prayer of the counterclaim the difference between what it was entitled to recover under the contract, given plaintiff's interference, and the amount it would have been entitled to recover had prompt payment been made, *i.e.,* the damages caused by the interference, we believe that it would be entitled to recover that damage under the facts alleged in the body of its pleading. The prayer is no part of the cause of action, and the

facts pleaded are sufficient to state a cause of action. *Williams v. Stockman's Life Insurance,* 250 Or 160, 167, 441 P2d 608 (1968); *Elliott v. Mosgrove,* 162 Or 507, 542-43, 91 P2d 852, 93 P2d 1070 (1939).

■ Defendant may not obtain a double recovery, nor may it have its claim of lost profits submitted to the jury, because that claim was submitted and resolved against it. On remand, however, it should be entitled to plead and prove any damage referable exclusively to the interference with its business which would not have been recoverable under the contract claim or which would have been recoverable under the contract but for defendant's interference. Punitive damages may be awarded if the jury determines that defendant is entitled to an award of actual damages for intentional interference with defendant's business relationships. *See Belleville v. Davis,* 262 Or 387, 405, 498 P2d 744 (1972).

■ Defendant argues that, under ORS 19.160, we should assess a 10 percent penalty against plaintiff for bringing this appeal without probable cause. "* * * [E]ven where there is 'but slight merit' to the appeal, damages under ORS 19.160 are inappropriate * * *." *Wesley v. Woods,* 42 Or App 85, 90, 172, 600 P2d 421, *rev den* 288 Or 1 (1979). A penalty is inappropriate here.

Affirmed on appeal; reversed and remanded on cross-appeal for further proceedings on defendant's counterclaim for tortious interference with business relations; prejudgment interest rate modified to 6 percent per year for July 23 and 24, 1979, and 9 percent thereafter until the date of judgment.