Argued and submitted May 21, 2002, at La Grande, affirmed June 12, 2003

## Frank ANDERSON,
*Respondent,*

*v.*

## FARMERS INSURANCE COMPANY OF OREGON,
*Appellant.*

## CV98-08-38946; A112325

71 P3d 144

Thomas M. Christ argued the cause for appellant. With him on the briefs was Cosgrave, Vergeer & Kester LLP.

W. Eugene Hallman argued the cause for respondent. With him on the brief was Hallman & Dretke.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

ARMSTRONG, J.

## ARMSTRONG, J.

Defendant Farmers Insurance Company of Oregon (Farmers) appeals from a judgment for plaintiff, its insured, on plaintiff's claim for breach of contract arising out of Farmers' failure to preauthorize payment of personal injury protection (PIP) benefits for the full cost of plaintiff's knee replacement surgery after an automobile accident. We affirm.

Most of the facts are not in dispute. Plaintiff was injured while driving his own automobile, which Farmers insured. At that time, plaintiff and his wife had three separate but identical policies insuring three different vehicles, each providing $25,000 in PIP coverage. The parties agree that the PIP policy insuring the car that plaintiff was driving at the time of the accident was the "primary" policy and that the policies covering the two other family vehicles were "excess" policies. ORS 742.526. Each PIP policy contained an "other insurance" clause prohibiting the "stacking"[1] of coverage:

"If any applicable insurance other than this policy is issued to you or a **family member** by us or any other member company of the Farmers Insurance Group of Companies, the total amount payable among all such policies shall not exceed the limits provided by the single policy with the highest limits of liability."

(Emphasis in original.) The parties agree that, by its terms, the clause restricts plaintiff's PIP benefits to the limits of the highest policy, in this case $25,000. As Farmers acknowledges, however, the clause is not enforceable "in full." Because the policies are for equal amounts, the clause would have the effect of completely denying PIP coverage on the two excess policies, when Oregon law requires some coverage. ORS 742.520 and 742.524 require every motor vehicle insurance policy to provide $10,000 in PIP coverage for each

---

[1] "Stacking" becomes an issue when, as here, multiple policies cover the same loss and the amount available under the primary policy is inadequate to satisfy the damages alleged or awarded. *Erickson v. Farmers Ins. Co.*, 331 Or 681, 683 n 1, 21 P3d 90 (2001).

insured for "all reasonable and necessary expenses of medical, hospital, dental, surgical, ambulance and prosthetic services incurred within one year after the date of the person's injury." Thus, Farmers concedes that, despite the anti-stacking clause in its policies, it was required to provide the minimum statutory PIP coverage in each policy; it calculates the amount due plaintiff as $25,000 under the primary policy and $10,000 under each excess policy, for a total PIP benefit of $45,000. In plaintiff's view, he is entitled to the full limits of his PIP policies on each policy for a total of $75,000 in PIP benefits.

Plaintiff's damages, including the proposed surgery, were in excess of $65,000. Farmers paid $32,000 toward plaintiff's medical expenses and agreed to pay an additional $13,000, which would have covered half the cost of the surgery, for a total PIP benefit of $45,000. Because plaintiff could not afford to pay the remaining $13,000 for the surgery, he chose not to have it and canceled the surgery and a preoperative medical examination. He brought this action against Farmers seeking damages for Farmers' failure to agree to pay the full cost of the surgery. The trial court concluded as a matter of law that plaintiff was entitled to the full PIP limits on each policy, to the extent of his damages. A jury found that Farmers had breached its contract with plaintiff by refusing to pay the full cost of the knee replacement surgery and awarded plaintiff $26,000 in economic damages and $200,000 in noneconomic damages. Farmers appeals from the judgment that the court entered on the jury verdict.

■       Farmers concedes that the challenged policy provision, if applied according to its terms, likely violates ORS 742.520. It asserts, nonetheless, that the anti-stacking provision can be applied with respect to policy limits in excess of the statutory minimum limits and, accordingly, that the trial court erred in denying its motion for summary judgment because, as a matter of law, plaintiff's PIP coverage under the three policies was only $45,000. In support of its position, Farmers looks to case law dealing with a similar issue in the context of motor vehicle liability insurance.

In *Collins v. Farmers Ins.*, 312 Or 337, 822 P2d 1146 (1991), the plaintiff was an insured person under a motor

vehicle liability insurance policy with limits of $100,000 per person and $300,000 per occurrence. The policy contained an exclusion for bodily injury to insured persons. The insurer offered to settle the plaintiff's claim for $25,000, the minimum coverage required by the Financial Responsibility Law (FRL), and sought to enforce the exclusion for bodily injury to the insured as to coverage beyond the statutory minimum limits. The court agreed with the insurer that ORS 742.464 permits such a result. The statute provides:

> "Any policy which grants the coverage required for a motor vehicle liability insurance policy under ORS 742.450, 806.080 and 806.270 may also grant any lawful coverage in excess of or in addition to the required coverage, *and such excess or additional coverage shall not be subject to the provisions of ORS 742.031, 742.400 and 742.450 to 742.464. With respect to a policy which grants such excess or additional coverage only that part of the coverage which is required by ORS 806.080 and 806.270 is subject to the requirements of those sections.*"

(Emphasis added.) The court explained the statute:

> "The manifest purpose of ORS 742.464 is to permit an insurer to write any other lawful coverage that the insurer wishes to write, in addition to the required coverage. Such coverage may include higher limits than those required by ORS 742.450 and 806.080. But as to such higher limits, the mandatory requirements of ORS 742.450 and 806.080 do not apply. The insurer may limit such additional coverage by any exclusion not otherwise prohibited by law.

> "To summarize, the law implies a provision in every motor vehicle liability insurance policy along these lines:

> "THIS POLICY PROVIDES ALL THE COVERAGE REQUIRED BY OREGON LAW, INCLUDING ORS 742.450, 806.080, AND 806.270.

> "Coverage other than that required by law may be limited by any lawful exclusion."

312 Or at 342. The court held that the insurer could enforce the policy exclusion for bodily injury to its insureds with respect to limits in excess of $25,000. The court's holding permits a motor vehicle liability insurer to enforce an exclusion

for otherwise required coverage to the extent that the coverage exceeds the minimum coverage required by law.

In Farmers' view, a similar analysis applies in the context of PIP coverage: An insurer should be permitted to enforce its anti-stacking clause with respect to coverage in excess of the $10,000 statutorily required PIP benefits. The first difficulty with Farmers' position is that the anti-stacking provision at issue here is different from the policy exclusion at issue in *Collins*. The court in *Collins* held that the exclusion could be given effect as to coverage in excess of the minimum required by law. Here, the anti-stacking clause provides that the PIP coverage available under all three insurance policies is limited to the highest limits provided by any single policy. Short of rewriting the clause, there is no tidy way of restricting its application to excess coverage. Additionally, we note that Farmers' policies otherwise *require* the stacking of PIP benefits in determining Farmers' proportionate share. A "limits of liability" clause provides:

> "If there is other applicable medical payments or Personal Injury Protection for medical and hospital benefits insurance that applies to a loss covered by this part, we will pay only our share. *Our share is the proportion that our limits of liability bear to the total of all applicable limits.*"

(Emphasis added.) The italicized sentence requires that the applicable policy limits be stacked to determine the insurer's proportionate share of liability.

The second reason why we conclude that the Supreme Court's decision in *Collins* is not helpful to Farmers is that the opinion hinged on the court's interpretation of ORS 742.464, which expressly exempts additional liability coverage from the statutory coverage requirements. There is no similar provision with respect to PIP coverage. ORS 742.532 provides:

> "Nothing in ORS 742.520 to 742.542 is intended to prevent an insurer from providing more favorable benefits than the personal injury protection benefits described in ORS 742.520, 742.524 and 742.530."

Thus, as Farmers did here, an insurer may provide greater PIP coverage than that required by ORS 742.524. However,

no provision similar to ORS 742.464 exempts the additional benefits from the requirements of ORS 742.520 or ORS 742.524 to 742.530. If provided, that greater coverage is subject to the provisions of ORS 742.520 and ORS 742.524 to 742.530.

There are statutorily permitted limits on PIP payments. ORS 742.530 provides for three exclusions, none of which is applicable here. ORS 742.526(2) provides for the reduction or limitation of PIP benefits for workers' compensation benefits or other similar medical or disability benefits. ORS 742.542 further provides that payment of PIP benefits by an insured

> "shall be applied in reduction of the amount of damages that the insured may be entitled to recover from the insurer under uninsured or underinsured motorist coverage for the same accident but may not be applied in reduction of the uninsured or underinsured motorist coverage policy limits."

Thus, the payment of PIP benefits reduces the damages due under uninsured motorist (UM) or underinsured motorist (UIM) coverage for the same accident. However, no statute permits an insurer to limit its PIP liability to the upper limits of one policy. We conclude that no statutory or policy provision authorizes the enforcement of the anti-stacking provision for coverage that exceeds the statutorily required minimum PIP coverage.

Our conclusion also finds support in a recent Supreme Court decision, *Erickson v. Farmers Ins. Co.*, 331 Or 681, 21 P3d 90 (2001). The plaintiff in *Erickson* was injured when the car in which she was a passenger collided with a car driven by an uninsured motorist. Both the plaintiff and the driver of the vehicle in which she was a passenger had identical UM coverage of $100,000 with the same insurer. By arbitration, the plaintiff was awarded damages of $150,000. The insurer paid the plaintiff $100,000 in UM benefits toward satisfaction of the arbitration award without identifying the policy from which the benefit had been paid. The plaintiff brought an action against the insurer to recover the balance of her damages. The insurer asserted that two "other insurance" clauses in its policies limited the plaintiff's UM benefit to the highest limits of the two policies. The court

held, first, that the two other insurance provisions denied the plaintiff coverage under her own policy in circumstances where UM statutes required some coverage and were therefore unenforceable. The court declined, however, to "amend" the policies by replacing the repugnant provisions with statutorily permitted "other insurance" limitations contained in ORS 742.504(9)(a) and (b). The policies, as here, also contained a clause implicitly authorizing the stacking of coverage by requiring the insurer to pay as its share of the loss "the proportion that our limits of liability bear to the total of all applicable limits." The court said that when the repugnant provisions were disregarded, the remaining policy terms permitted stacking of UM coverage to the full amount of the arbitration award:

"Nothing more is required to conform the policy to Oregon law. Thus, there is no reason to replace the unenforceable provisions that denied plaintiff coverage with the statutory provisions."

331 Or at 687.

Here, the provisions of the policies prohibiting stacking violate Oregon law and must be disregarded. When the clauses are disregarded, each PIP policy provides coverage of $25,000. And here, because each PIP policy also contains a clause limiting the insurer's share to "the proportion that our limits of liability bear to the total of all applicable limits," each policy implicitly permits stacking. As we held in *Porter v. Utah Home Fire Insurance Co.*, 58 Or App 729, 734, 650 P2d 130 (1982), *overruled on other grounds by Employers' Fire Ins. v. Love It Ice Cream*, 64 Or App 784, 670 P2d 160 (1983), no statutory provision precludes the stacking of PIP benefits when the damages exceed the limits of the primary coverage. We affirm the trial court's ruling denying Farmers' motion for summary judgment.

■ Farmers also assigns error to the trial court's denial of its motion for a directed verdict, in which it asserted that it had not breached the insurance contract by failing to preauthorize the full cost of plaintiff's proposed knee surgery because the surgical expense was never incurred. Consistently with ORS 742.524,[2] Farmers' three policies provided

---

[2] ORS 742.524 provides, in part, that PIP benefits shall be paid for all medical services "incurred within one year after the date of the person's injury."

that it would pay all medical expenses "incurred" within one year from the date of the accident that caused the injury. Farmers contends that the statute and policies require a medical expense to be incurred before an insurance company can be required to pay it. Farmers contends that, because plaintiff never had the proposed surgery, the expense was not incurred and therefore was not a covered medical expense. Plaintiff responds that Farmers should not be able to avoid liability on the ground that the expense was not incurred because the surgery had been recommended by his physician and, but for Farmers' refusal to preauthorize the full cost, the expense would have been incurred.

The trial court treated Farmers' refusal to pay for the surgery as a repudiation of its obligation under the insurance contract to pay for medical expenses caused by the accident. We agree with the trial court that, in light of its refusal to preauthorize the surgery, Farmers cannot assert that the expense was not incurred during the prescribed period. The evidence in the record would support a finding that plaintiff chose not to have the knee replacement surgery because he could not afford to pay for the balance of the cost of the surgery in excess of the amount that Farmers had preauthorized. Plaintiff's failure to incur the expense cannot provide an excuse for Farmers' refusal to pay for the surgery. *Cf. Eggiman v. Mid-Century Ins. Co.,* 134 Or App 381, 387, 895 P2d 333 (1995) (applying related principle).

Citing *Aurora Aviation v. AAR Western Skyways,* 75 Or App 598, 603, 707 P2d 631 (1985), Farmers contends that, if its failure to preauthorize the surgery was a repudiation of the contract, then plaintiff must establish that he was able to perform his part of the bargain, that is, that he was medically able to have the surgery. Farmers argues that, because plaintiff did not submit to a scheduled preoperative medical examination to determine whether he was medically fit to have the surgery, it is not possible to determine whether he was able to have the proposed surgery, and, hence, plaintiff has failed to establish his ability to perform.

Farmers' argument is based on the false premise that plaintiff's duties under the contract included establishing his medical ability to have the surgery. By law, Farmers

had an obligation to pay for all reasonable and necessary medical expenses. ORS 742.524. Farmers identifies no provision in its policy that requires an insured to establish a medical ability to withstand a recommended procedure.

There was evidence from which the jury could find that the recommended knee surgery was reasonable and necessary. Furthermore, Farmers' willingness to pay for half the cost of the surgery is an indication that it considered the surgery to be a covered expense, even without proof of plaintiff's ability to tolerate the surgery. We reject without further discussion Farmers' contention that plaintiff could enforce Farmers' obligation to provide coverage for his medical expenses only if he could establish that he was medically fit for the procedure. For the same reason, we conclude that the trial court did not err in declining to give Farmers' requested jury instruction that, to prevail on his claim that Farmers had repudiated the insurance policy, plaintiff had to prove that he was medically able to have the surgery.

■ Farmers asserts that the trial court erred in refusing to allow Farmers to argue that plaintiff had suffered no damages as a result of Farmers' repudiation of its contractual obligation to pay for the surgery because plaintiff was medically unable to have the surgery. There was evidence that, two to three years after the surgery was recommended, plaintiff would not have been a good candidate for the surgery. However, at trial the only evidence concerning the reason that plaintiff did not have the surgery was that it was because Farmers had refused to preauthorize the full cost of the surgery as a result of its view that the PIP policy limits were $45,000. Farmers' contention at trial that plaintiff would have been medically unable to tolerate the surgery at the time that it was requested was purely speculative and not based on any medical evidence in the record. The trial court did not abuse its discretion in forbidding Farmers to argue the point to the jury.

■ Farmers' final contention is that the trial court erred in allowing plaintiff to introduce his wife's testimony about advice that she had received from the Department of Consumer and Business Services Insurance Division about Farmers' coverage position. When Farmers told plaintiff that

his PIP coverage was only $45,000, plaintiff's wife filed a complaint with the Insurance Division. Plaintiff's wife testified that a compliance officer with the division told her that the division "couldn't convince [Farmers' adjusters] to change their opinion" concerning plaintiff's PIP coverage and told her that the matter would have to go to arbitration and recommended that plaintiff hire an attorney. Farmers objected to the testimony on the ground that it was hearsay; the trial court overruled the objection, explaining that the testimony concerned "what this woman did." We agree with plaintiff that the testimony was not offered to prove the truth of the matter asserted, that is, that the Insurance Division had agreed with plaintiff's view as to the limits of PIP coverage and had been unable to persuade Farmers to change its position. Rather, the evidence was offered to explain the background of the dispute. In any event, even assuming that the evidence was hearsay, any error in admitting it was not prejudicial. ORS 19.415. The legal question of the PIP limits under the insurance policies was decided by the court. For that reason, whether the Insurance Division agreed or disagreed with plaintiff's position as to the scope of coverage is not likely to have affected the jury's decision on the issues that were submitted to it for decision.

Affirmed.