Argued and submitted July 8, 2020, reversed and remanded September 9, 2021, petition for review denied January 20, 2022 (369 Or 209)

## Danielle PADILLA,
*Plaintiff-Appellant,*

*v.*

## STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
*Defendant-Respondent.*

Linn County Circuit Court
18CV23714; A170284

499 P3d 100

In this civil appeal, plaintiff contests the trial court's determination that certain personal injury protection (PIP) benefits were limited by statute to 52 weeks. Plaintiff was seriously injured while riding as a passenger in an automobile and was unable to return to work after the driver's PIP policy paid 52 weeks of lost wage benefits. Plaintiff then filed an insurance claim with her own PIP insurer but was denied lost wage benefits on the basis that the 52-week limit applies to all applicable policies in a loss. On appeal, plaintiff assigns error to the court's determination that ORS 742.524(1)(b) does not require an excess insurer to pay benefits after the 52-week limit described in that statute. *Held*: The trial court did not properly interpret ORS 742.524 in light of ORS 742.526, which sets the relationship between insurers as primary or excess in a particular loss. Nothing in the text or context of ORS 742.524 requires that the 52-week limit be applied collectively to all applicable policies in a particular loss, rather the text of that statute provides that the limit applies on a per-policy basis. Therefore, an excess insurer, as defined by ORS 742.526, may be liable to pay PIP benefits when the loss exceeds the limits for primary insurer benefits required by statute.

Reversed and remanded.

DeAnn L. Novotny, Judge.

Alexander W. Pletch argued the cause for appellant. On the brief were Emily K. Shack and Shlesinger & deVilleneuve Attorneys, P.C.

Ralph C. Spooner argued the cause for respondent. Also on the brief were David E. Smith, and Spooner & Much, PC.

Before Lagesen, Presiding Judge, and James, Judge, and Kamins, Judge.

JAMES, J.

Reversed and remanded.

**JAMES, J.**

In Oregon, persons injured in automobile accidents are entitled, by statute, to certain personal injury protection (PIP) benefits. ORS 742.524(1)(b) provides that, as part of those benefits, an injured person is entitled to lost wages in certain circumstances but that "[t]his benefit is subject to a maximum payment of $3,000 per month and a maximum payment period in the aggregate of 52 weeks." When there are multiple insurance policies at play we have previously held that the $3,000 per month cap can be exceeded by the excess policy. This is known as insurance "stacking." The question in this case is how the 52-week limitation applies in the context of multiple policies—that is, whether an injured party that has received 52 weeks of wage-loss benefits under a primary insurance policy can be entitled to additional PIP benefits under a second motor vehicle policy that would carry payments beyond the 52-week barrier. The trial court ruled that the 52-week limitation runs concurrently for all policies, meaning that an injured party is not entitled to any additional PIP benefits beyond the 52-week period covered by the primary policy, regardless of the presence of an excess, or additional, policy. We disagree with that construction of the statute and conclude that stacking is permitted under the statutory scheme, and therefore reverse and remand.

The relevant facts and procedural history are undisputed. In March 2017, plaintiff was a passenger in a vehicle that crashed, causing her substantial injuries. As a result of those injuries, plaintiff was unable to work, and her disability persisted for more than 86 weeks.

Plaintiff received wage-loss benefits under the car owner's PIP policy, which included payment for 52 weeks of lost wages. After she exhausted the wage-loss benefits of that policy, plaintiff filed a proof of loss for additional benefits based on continuing disability under her own motor vehicle policy, which was issued by defendant. Defendant refused to pay those benefits on the ground that plaintiff had already received wage-loss benefits for an aggregate period of 52 weeks under the other policy and, consequently, her statutory entitlement was exhausted.

Plaintiff then filed this action for breach of contract, arguing that she was entitled to PIP benefits under her own policy for up to an additional 52 weeks of lost wages beyond what had been paid by the car owner's insurer. The parties agreed that there were no disputed issues of material fact on that question, and they filed cross-motions for summary judgment that presented a single issue of statutory interpretation: whether the 52-week limitation in ORS 742.524 (1)(b) applies independently to each applicable PIP policy, as plaintiff contended, or whether the limitation runs concurrently for all policies, as defendant contended. The trial court agreed with defendant's interpretation and entered judgment in its favor. Plaintiff now appeals that judgment, assigning error to the court's ruling on the cross-motions.

On cross-motions for summary judgment, we review for legal error. *Bergeron v. Aero Sales, Inc.*, 205 Or App 257, 261, 134 P3d 964, *rev den*, 341 Or 548 (2006). In this case, the dispositive legal question involves the interpretation and interplay between two related statutes, ORS 742.524 (describing PIP benefits) and ORS 752.526 (describing "excess" coverage). Thus, we consider the text of those statutes, their surrounding context, and to the extent useful, their legislative history, all with the goal of discerning the legislature's intent with regard to payment of wage-loss benefits under multiple policies with PIP coverage. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009) (describing statutory construction framework).

Following the adoption of the PIP scheme in 1971, every motor vehicle liability policy issued for delivery in Oregon for a private passenger vehicle shall provide "personal injury protection benefits to the person insured thereunder, members of that person's family residing in the same household, children not related to the insured by blood, marriage or adoption who are residing in the same household as the insured and being reared as the insured's own, passengers occupying the insured motor vehicle and pedestrians struck by the insured motor vehicle." ORS 742.520(1). The scheme is aimed at providing "prompt payment of two types of major expenses: medical costs and replacement of loss of income" as a result of injury or death resulting from the use, occupancy, or maintenance of a motor vehicle. *Dowell v.*

*Oregon Mutual Ins. Co.*, 361 Or 62, 78, 388 P3d 1050 (2017); *see* ORS 742.518(7) ("'Personal injury protection benefits' means the benefits described in ORS 742.518 to 742.542."); ORS 742.520(3) (providing that PIP benefits "consist of payments for expenses, loss of income and loss of essential services as provided in ORS 742.524").

The PIP benefits at issue in this case are for "loss of income" described in ORS 742.524:

"(1)  Personal injury protection benefits required by ORS 742.520 consist of the following payments for the injury or death of each person:

"* * * * *

"(b)  If the injured person is usually engaged in a remunerative occupation and if disability continues for at least 14 days, 70 percent of the loss of income from work during the period of the injured person's disability until the date the person is able to return to the person's usual occupation. This benefit is subject to a maximum payment of $3,000 per month and a maximum payment period in the aggregate of 52 weeks. As used in this paragraph, 'income' includes but is not limited to salary, wages, tips, commissions, professional fees and profits from an individually owned business or farm."

Under the plain text of paragraph (b), if an injured person satisfies the two preconditions (*i.e.*, "is usually engaged in a remunerative occupation" and "disability continues for at least 14 days"), then the PIP benefits consist of payments for "70 percent of the loss of income" from work during the period of disability until return to the usual occupation. The second sentence then limits "[t]his benefit" in two ways, subjecting it to (1) "a maximum payment of $3,000 per month" and (2) "a maximum payment period in the aggregate of 52 weeks."

As this case demonstrates, more than one motor vehicle policy can provide PIP coverage for a person who has been injured in an accident, such as when a passenger is entitled to benefits under the vehicle owner's policy and as a named insured under the passenger's own policy. That is where ORS 742.526(1) comes into play, which addresses the relationship between multiple applicable policies:

"*The personal injury protection benefits with respect to*:

"(a)   The insured and members of the family of the insured residing in the same household injured while occupying the insured motor vehicle shall be primary.

"(b)   *Passengers injured while occupying the insured motor vehicle shall be primary.*

"(c)   The insured and members of family residing in the same household injured as pedestrians shall be primary.

"(d)   *The insured and members of family residing in the same household injured while occupying a motor vehicle not insured under the policy shall be excess.*

"(e)   Pedestrians injured by the insured motor vehicle, other than the insured and members of family residing in the same household, shall be excess over any other collateral benefits to which the injured person is entitled, including but not limited to insurance benefits, governmental benefits or gratuitous benefits."

ORS 742.526(1) (emphases added). *See Porter v. Utah Home Fire Insurance Co.*, 58 Or App 729, 733-34, 650 P2d 130 (1982), *overruled on other grounds by Employers' Fire Ins. v. Love It Ice Cream*, 64 Or App 784, 670 P2d 160 (1983) (interpreting ORS 742.526, then numbered ORS 743.810, and describing some of the legislative history regarding the primary/excess distinction in PIP coverage).

In this case, the parties agree that PIP benefits under plaintiff's policy with defendant are excess within the meaning of ORS 742.526. Their dispute is about what "excess" means in the context of the wage-loss payments described in ORS 742.524(1)(b).[1]

Neither ORS 742.526 nor ORS 742.524(1)(b) supplies a particularly clear answer to that question. The term "excess" is not defined in ORS 742.526, but it is a term of art in the insurance context. *See Comcast Corp. v. Dept. of*

---

[1] As the parties have framed the dispute, it is about the interpretation of ORS 742.524(1)(b), not provisions in the policy issued by defendant that either compel or restrict the stacking of benefits. *Cf. Anderson v. Farmers Ins. Co.*, 188 Or App 179, 184, 71 P3d 144 (2003) (addressing whether "[a]n insurer should be permitted to enforce its anti-stacking clause with respect to coverage in excess of the $10,000 statutorily required PIP benefits").

*Rev.*, 356 Or 282, 296, 337 P3d 768 (2014) (when legislature uses terms drawn from a specialized trade or field, courts look to the meaning and usage of those terms in the discipline from which the legislature borrowed); *Maine Bonding v. Centennial Ins. Co.*, 298 Or 514, 520, 693 P2d 1296 (1985) (explaining that an excess insurer may be liable for covered losses greater than the primary policy limits); *Porter*, 58 Or App at 731-32 (applying similar definition of excess insurance in PIP context). "Excess insurance" generally has two similar but different meanings: "1: insurance in which the underwriter's liability does not arise until the loss exceeds a stated amount and then only on the excess above that amount" and "2: insurance over and above that necessary to meet the requirements of a coinsurance clause." *Webster's Third New Int'l Dictionary* 792 (unabridged ed 2002) (defining "excess insurance").[2]

In providing that PIP benefits shall be "excess" in certain circumstances, the legislature appears to have used the term in a way that is consistent with and has features of both meanings: Where two motor vehicle policies are available to cover the same expenses, loss of income, and loss of essential services as provided in ORS 742.524 for an injury or death from a vehicle accident, then PIP benefits from the insured's policy are "excess"—meaning that they only cover losses over and above the amount covered by the driver's (primary) policy.

The parties appear to agree as to that much. Where they part company is on how to determine whether primary

---

[2] In *Oregon Mutual Ins. Co. v. Certain Underwriters*, 295 Or App 790, 798, 437 P3d 232 (2019), we explained the differences between those definitions. A "true" excess liability policy provides a specific amount of coverage above an underlying limit of primary insurance, but does not expand the scope of the coverage. *Id.* That is different from "a primary policy with an excess 'other insurance' clause. An excess 'other insurance' clause is a clause that provides that, if other insurance is available to cover the same loss, then the policy will provide only 'excess' insurance over the other available insurance." *Id.* In general, terms like "excess insurance" means the same thing as "excess coverage." *Accord Truck Ins. Exch. v. Rutherford*, 395 P3d 143, 145 (Utah 2017) (observing that terms like "primary coverage," "secondary coverage," and "excess coverage" are terms of art in the insurance context, and that "'[s]econdary coverage' is synonymous with 'excess coverage,' *id.*, which is '[a]n agreement to indemnify against any loss that exceeds the amount of coverage under another policy'" (quoting *Black's Law Dictionary* (7th ed 1999))).

PIP coverage has been exceeded in the case of wage loss—specifically, in light of the second sentence of ORS 742.524 (1)(b), which provides, "This benefit [of up to 70 percent of income during the period of disability] is subject to a maximum payment of $3,000 per month *and a maximum payment period in the aggregate of 52 weeks*." (Emphasis added.)

According to defendant, the legislature intended to impose a maximum payment period of 52 weeks for all PIP coverage, as opposed to imposing a per-policy maximum whereby the 52 weeks could stack and allow recovery during a period of disability that exceeds 52 weeks. Plaintiff, on the other hand, argues that the limitations in ORS 742.524(1)(b) are best understood as per-policy limitations.

Although the PIP scheme is not a model of clarity on the matter, we ultimately conclude that plaintiff offers the more plausible and defensible interpretation of the limitations imposed by the PIP scheme. First, we note that defendant has little textual support for its construction, relying almost exclusively on the legislature's use of the term "aggregate" to inform how the 52-week limitation should be construed:

> "The text of ORS 742.524(1)(b) is clear that the insured is entitled to loss of income for accident-related disability for the period of her disability up to 52 weeks in aggregate for the lesser of $3,000 per month or 70% of the insured's actual loss of income. Aggregate means 'to collect into a whole.' BLACK'S LAW DICTIONARY 28 (3rd Pocket Ed 2006). The legislature's use of 'aggregate' implies that the legislature intended the insured to only collect 52 weeks of loss of income benefits."

Although we generally agree with defendant's definition of the term "aggregate," it does little to answer the question before us, which is whether that meaning of "aggregate" (counting all weeks) was intended to apply or run with respect to individual policies or all policies collectively. That question of intent turns not on the word "aggregate" but on how the aggregate limitation applies to "[t]his benefit" under ORS 742.524(1)(b).

As plaintiff points out, the limitations on "[t]his benefit" are more plausibly understood as per-policy limitations

on PIP benefits for wage-loss payments. Contextually, "[t]his benefit" refers to the benefit just described in the first sentence of ORS 742.524(1)(b), which is among the "[p]ersonal injury protection benefits required by ORS 742.520." ORS 742.524(1). The PIP benefits "required by ORS 742.520," in turn, are benefits that must be provided on a per-policy basis, *see* ORS 742.520(1), not collectively.

Moreover, "[t]his benefit" is limited in two ways: a "maximum payment of $3,000 per month" and a "maximum payment period in the aggregate of 52 weeks." Defendant does not dispute that the $3,000 per-month limitation imposes a per-policy limitation, and that concession is well taken—at least, if "excess" benefits are to mean much of anything in this context; otherwise, the primary policy would pay the collective "maximum payment of $3,000 per month," and no excess benefits would be triggered regardless of whether an insured had remaining wage losses. Nothing in the structure of the statute suggests that the 52-week limitation should be understood differently from the $3,000 limitation. That is, we see no sound textual reason to conclude that "[t]his benefit" is subject to a per-policy $3,000 limitation but a collective 52-week limitation that runs concurrently for all policies. *See McLaughlin v. Wilson*, 365 Or 535, 541, 449 P3d 492 (2019) (term generally has the same meaning throughout a statute).

Defendant's remaining arguments are based primarily on (1) "how 'stacking' works"—that is, the usual process by which benefits from an additional policy on the same claim are obtained when recovery on the first policy would be inadequate to cover the damages; and (2) policy considerations that flow from different stacking approaches. Suffice it to say that defendant has not persuaded us that the principles discussed in those other cases can be neatly imported to this PIP context,[3] or that the policy considerations identified by defendant would allow us to ignore the absence of textual support for its position.

---

[3] Defendant cites cases in which courts have stacked benefit amounts, including PIP amounts, but none of those cases involved the question before us or provide reasoning that would help us interpret or apply the PIP statutes to this factual scenario involving a period of disability extending beyond 52 weeks.

For the foregoing reasons, we agree with plaintiff that the second sentence of ORS 742.524(1)(b) imposes per-policy limitations, not a 52-week period that applies to and runs collectively for all policies. The trial court erred in concluding otherwise.

Reversed and remanded.